276 N.J. Super. 626 (1994)
648 A.2d 738
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NORMAN JACKSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 1994.
Decided October 25, 1994.
*627 Before Judges BRODY, LONG and A.M. STEIN.
Edward F. Borden, Jr., Camden County Prosecutor, attorney for appellant (Robert K. Uyehara, Jr., Assistant Prosecutor, of counsel and on the letter brief).
*628 Raymond E. Milavsky, attorney for respondent (Mr. Milavsky on the letter brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
We granted the State leave to appeal from the Law Division judge's order suppressing fifteen bags of cocaine seized from defendant's jacket pocket as a consequence of a Terry[1] patdown. Judge Colalillo upheld the reasonableness of the patdown of defendant's outer clothing, but suppressed the evidence seized from defendant's pocket as the product of an unreasonable search.
This case involves consideration and application of the "plain feel" or "plain touch" doctrine in a protective patdown situation, a corollary to the plain view doctrine. Minnesota v. Dickerson, 508 U.S. ___, ___ n. 1, 113 S.Ct. 2130, 2134 n. 1, 124 L.Ed.2d 334, 343 n. 1 (1993). There are no reported New Jersey cases on the subject. The doctrine was recently addressed by the United States Supreme Court in Dickerson, supra.
On April 22, 1993, at approximately 12:45 p.m., Patrolman Weitzel of the Camden Police Department received a dispatch sending him to the 1800 block of South 6th Street in Camden. The dispatch informed him that a black male, with a gun, approximately five foot eleven inches, thin build, dressed in gold clothing, was taking CDS from a 1978 white, two-door Volvo, model 242, with New Jersey license plate HOS 13R. The record does not disclose the source of the information contained in the dispatch. Weitzel testified that the 1800 block of South 6th Street was a known drug trafficking area.
Weitzel immediately went to the scene where he observed defendant, a black male, dressed in a gold jacket and gold jeans. Defendant was in front of his home putting gas in his car, which fit the description in the dispatch: a white, two-door Volvo, model *629 242, with New Jersey license plate HOS 13R. He was not "taking CDS" from the vehicle.
When Weitzel patted defendant down for weapons, he discovered a bulge in the right jacket pocket. The State stipulated and Weitzel later testified that he was aware that the object in defendant's pocket did not feel like a weapon. Weitzel could not tell what the object was in the jacket pocket. The object was "hard but flexible." The "object" was fifteen small plastic bags containing cocaine.
We reject the State's contention that Officer Weitzel had probable cause to search defendant for narcotics. The frisk was for weapons, not for drugs. We need not decide whether Officer Weitzel's initial patdown of defendant was constitutionally permissible. A police officer may make a protective search for weapons
where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

[Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909, quoted in State v. Thomas, 110 N.J. 673, 679, 542 A.2d 912 (1988) (emphasis added).]
Although art. I, ¶ 7 of the New Jersey Constitution of 1947 may give greater protection against unreasonable searches and seizures than the Fourth Amendment, State v. Novembrino, 105 N.J. 95, 145, 519 A.2d 820 (1987), our state constitution does not demand a higher standard than the Fourth Amendment in order to justify a frisk incident to a lawful investigatory stop. State v. Valentine, 134 N.J. 536, 543, 636 A.2d 505 (1994).
The test "is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1868, 20 L.Ed.2d at 909. The protective search "must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911 (cited in State v. Lund, 119 N.J. 35, 39, *630 573 A.2d 1376 (1990)). Once Officer Weitzel determined that the object in defendant's pocket was not a weapon and could not identify the object as contraband, the search went "beyond what is necessary to determine if the suspect is armed," and it went beyond the boundaries established by Terry and by Sibron v. New York, 392 U.S. 40, 65-66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936 (1968). Dickerson, supra, 508 U.S. at ___, 113 S.Ct. at 2136, 124 L.Ed.2d at 344.
The facts in this case are similar to those in Dickerson. During a protective search, the officer felt a small lump in defendant's jacket. He testified: "[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane." Id. at ___, 113 S.Ct. at 2133, 124 L.Ed.2d at 341. The officer reached into the "pocket and retrieved a small plastic bag containing" crack cocaine. Id. at ___-___, 113 S.Ct. at 2133-34, 124 L.Ed.2d at 341. The Supreme Court upheld the validity of plain feel searches and seizures within constitutional limits: "The question presented today is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry. We think the answer is clearly that they may, so long as the officer's search stays within the bounds marked by Terry." Id. at ___, 113 S.Ct. at 2136, 124 L.Ed.2d at 344. Justice White, speaking for the Court, said:
The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment  or at least no search independent of the initial intrusion that gave the officers their vantage point.... The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be *631 justified by the same practical considerations that inhere in the plain view context.

[Id. at ___, 113 S.Ct. at 2137, 124 L.Ed.2d at 345-46 (emphasis added).]
The search and seizure in Dickerson was improper because the officer realized that the lump was not a weapon and could identify it as "contraband only after `squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'  a pocket which the officer already knew contained no weapon." Id. at ___, 113 S.Ct. at 2138, 124 L.Ed.2d at 347 (citation omitted).
The critical facts in this case are virtually indistinguishable from those in Minnesota v. Dickerson. The State stipulated and Officer Weitzel later testified that the object in defendant's jacket pocket was not a weapon. He could not identify the "hard but flexible" object in the pocket. "[T]he officer's continued exploration of [defendant's] pocket after having concluded that it contained no weapon was unrelated to `[t]he sole justification of the search [under Terry:] ... the protection of the police officer and others nearby.'" Id. at ___-___, 113 S.Ct. at 2138-39, 124 L.Ed.2d at 347 (quoting Terry, supra, 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911).
Affirmed.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).