NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0489-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT L. EVANS,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

February 28, 2017

APPELLATE DIVISION

Argued June 1, 2016 — Decided February 28, 2017

Before Judges Fisher, Espinosa and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 12-05-0572.

Margaret McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. McLane, of counsel and on the briefs).

Elizabeth K. Tornese, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Ms. Tornese, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Defendant was arrested — not for a crime — but on a warrant for failure to pay a $6.50 traffic fine, and subjected to a strip search. In N.J.S.A. 2A:161A-1, the Legislature established requirements, designed to provide greater protection than the Fourth Amendment, that must be satisfied before a strip search may be conducted under such circumstances. See, State v. Hayes, 327 N.J. Super. 373, 381 (App. Div. 2000). In the absence of a warrant or consent, the statute prohibits a strip search of a person who has been "detained or arrested for commission of an offense other than a crime" unless the search is based on probable cause and "a recognized exception to the warrant requirement." N.J.S.A. 2A:161A-1(b). Guidelines issued by the Attorney General's Office[1] set forth even more exacting criteria to be satisfied before a strip search is conducted.

In this appeal, we consider the application of the "plain feel" exception to the warrant requirement, Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); State v. Jackson, 276 N.J. Super. 626, 628 (App. Div. 1994), to the strip search that was conducted. For the reasons that follow, we conclude the plain feel exception did not apply and, further,

_____

[1] New Jersey Office of the Attorney General, Attorney General's Strip Search and Body Cavity Search Requirements and Procedures for Police Officers (July 1995) (the Attorney General Guidelines or the Guidelines) can be located at: http://www.state.nj.us/lps/dcj/agguide/3strpsch.pdf.

that the seizure of drugs from defendant's person was not objectively reasonable. We also reverse defendant's convictions and remand for a hearing to determine whether the search of an automobile pursuant to a search warrant was sufficiently free of taint from the unlawful search and seizure.

## I.

Defendant was arrested on an outstanding warrant for failure to pay a $6.50 fine. In the search incident to arrest, the officer seized approximately $2,000 from defendant's person, observed a bulge in the groin area of defendant's pants and manipulated the bulge. Defendant was taken to the police station where he was subjected to a strip search. The strip search resulted in the recovery of two rocks of crack cocaine totaling 0.56 ounces and nine bags of heroin containing approximately 0.018 grams each. A search warrant was obtained for the car defendant had been driving. Execution of that warrant resulted in the seizure of a gun and hollow nose bullets.

After defendant's motion to suppress evidence was denied, a jury convicted him of second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b), (count one); third-degree possession of a controlled dangerous substance (heroin and cocaine), N.J.S.A. 2C:35-10(a)(1), (counts two and three); second-degree possession with intent to distribute a controlled dangerous substance

3

(cocaine), N.J.S.A. 2C:35-5(b)(2), (count four); third-degree possession with intent to distribute a controlled dangerous substance (heroin), N.J.S.A. 2C:35-5(b)(3) (count five); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f) (count six); second-degree possession of a firearm during a controlled dangerous substances offense, N.J.S.A. 2C:39-4.1(a) (count seven); and second-degree certain persons possession of a firearm, N.J.S.A. 2C:39-7(b)(1), (count eight). After appropriate mergers, defendant was sentenced to an aggregate term of forty years with a twenty-year period of parole ineligibility.

Defendant appeals from the denial of his suppression motion, his judgment of conviction and his sentence, raising the following arguments for our consideration:

> POINT I
>
> THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE DRUGS FOUND ON HIS PERSON AND THE GUN FOUND IN THE CAR. U.S. CONST. AMEND. IV, XIV; N.J. CONST. ART. 1, PARA. 7.
>
>> A. THE DRUGS MUST BE SUPPRESSED.
>>
>> B. THE GUN MUST BE SUPPRESSED.
>
> POINT II
>
> THE EXPERT'S TESITMONY [SIC] WHICH WAS NOT HELPFUL AND EMBRACED THE ULTIMATE ISSUE, COMBINED WITH THE

4

COURT'S INADEQUATE EXPERT WITNESS JURY INSTRUCTIONS DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW. (Not Raised Below).

A.   INTRODUCTION.

B.   THE STATE'S EXPERT OVERSTEPPED THE LIMITS OF ODOM[2] AND HIS ULTIMATE ISSUE TESTIMONY SEVERELY PREJUDICED THE DEFENSE.

C.   THE USE OF THE HYPOTHETICAL WAS IMPROPER BECAUSE IT DID NOT ASSIST THE JURY AND THE RISK OF UNDUE PREJUDICE FAR OUTWEIGHED ANY PROBATIVE VALUE.

D.   THE STATE'S EXPERT SHOULD NOT HAVE BEEN PERMITTED TO TESTIFY THAT DRUG DEALERS CARRY GUNS BECAUSE IT WAS NOT HELPFUL TO THE JURY AND INTERFERED WITH THE JURY'S ABILITY TO SEPARATELY CONSIDER THE DRUG POSSESSION AND GUN POSSESSION CHARGES.

E.   THE STATE'S EXPERT IMPROPERLY INTRODUCED IRRELEVANT AND HIGHLY PREJUDICIAL TESTIMONY IMPLYING THAT DEFENDANT WAS A MID- TO UPPER-ECHELON DEALER WHERE THERE WAS NO EVIDENCE TO SUPPORT THAT OPINION.

F.   CONCLUSION.

POINT III

IT WAS PROSECUTORIAL MISCONDUCT TO FALSELY CLAIM THAT THE EXPERT HAD OPINED THAT DEFENDANT'S MONEY WAS

---

[2]   State v. Odom, 116 N.J. 65 (1989).

5

FROM THE SALE OF DRUGS.  (Partially Raised Below).

POINT IV

DEFENDANT WAS DENIED A FAIR TRIAL BY THE COURT'S MANAGEMENT OF VOIR DIRE, WHICH MAY HAVE HAD A CHILLING EFFECT ON THE JURORS' WILLINGNESS TO SPEAK FREELY.  N.J. CONST. ART. 1, PARAS. 9, 10.

POINT V

THE CUMULATIVE IMPACT OF THE ERRORS DENIED DEFENDANT A FAIR TRIAL.

POINT VI

DEFENDANT'S SENTENCE IS EXCESSIVE AND MUST BE VACATED BECAUSE THE COURT FAILED TO CONDUCT ANY YARBOUGH[3] ANALYSIS, FAILED TO ADDRESS MITIGATING FACTORS, ENGAGED IN IMPERMISSIBLE DOUBLE COUNTING, AND IMPOSED THE MAXIMUM SENTENCE ON ALL COUNTS.

   A.   THE COURT ERRONEOUSLY IMPOSED A CONSECUTIVE SENTENCE ON COUNT EIGHT.

   B.   THE COURT FAILED TO ADDRESS ANY MITIGATING FACTORS REQUESTED BY THE DEFENSE.

   C.   THE COURT ENGAGED IN IMPERMISSIBLE DOUBLE COUNTING BY IMPOSING AN EXTENDED TERM AND THE MAXIMUM LEGAL SENTENCE.

---

[3]  State v. Yarbough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986)

6

D.    THE     SENTENCE     IS
MANIFESTLY EXCESSIVE.

Defendant raised the following argument in a supplemental pro se brief:

> THE COURT ERRED AND DENIED APPELLANT A FAIR TRIAL, UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION, WHEN THE TRIAL COURT FORCED APPELLANT TO STAND TRIAL IN RESTRAINTS. DEFENDANT'S FUNDAMENTAL RIGHT TO A FAIR TRIAL WAS VIO[]LATED WHEN HE WAS COMPELLED AT TRIAL TO APPEAR BEFORE THE JURY WITH HIS FEET SHACKLED.

We reverse the denial of defendant's motion to suppress the evidence seized from his person and the convictions that depend upon that evidence: counts two, three, four, five and seven. We also reverse defendant's convictions for: possession of a firearm (count one), possession of hollow nose bullets (count six) and certain persons weapons possession (count eight) and remand for the trial court to conduct a hearing to determine whether the search warrant obtained for the search of the automobile is free of the taint from the unlawful strip search. As a result, we need not address the arguments presented in Points II and VI. The arguments raised in Points III, IV and V lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

7

The facts elicited at the suppression hearing can be summarized as follows.

Officer Felipe Laboy of the Vineland Police Department testified he performed a "warrant check" on an irregular basis to see what new warrants had been issued and did so at the beginning of his shift on January 4, 2012. He prepared a list of the names of persons with outstanding warrants, which included defendant. He did not know the reason for the warrant for defendant.[4]

While on patrol that evening, Laboy observed defendant[5] drive onto the west side of the Days Inn property and back into a parking stall. When defendant saw the officers on the property, he pulled out of the parking stall and drove away. Laboy and his partner followed defendant to pull him over and place him under arrest for the warrant. Defendant was not under investigation for any offense at that time. However, it was Laboy's intention to issue a summons for trespassing if defendant did not have a room at the Days Inn.

---

[4]   On cross-examination at trial, Laboy was presented with the warrant and confirmed that the warrant was a traffic warrant, rather than a criminal warrant, issued on May 26, 2010, for $6.50.

[5]   Laboy testified he knew defendant and was aware he had been arrested for burglary and possession of marijuana in July 2011.

After placing defendant under arrest, Laboy confirmed there was an active warrant for him. He did not, however, determine what the warrant was for.

Laboy proceeded to search defendant. He testified, "It wasn't a patdown search; it was an actual search. It was a search incident to arrest." He recovered "a little over $2,000" from defendant's pocket. Laboy observed a bulge in defendant's pants. When defendant stated he did not know what the bulge was, Laboy felt the bulge in defendant's groin area and manipulated it. He was questioned about the bulge as follows:

> Q. Can you describe what, if anything, you felt?
>
> A. It felt like a rocklike substance.
>
> Q. Now, prior to arresting Mr. Evans, did you have any information that he was carrying drugs on him? In fact, did you pull him over for drugs that evening?
>
> A. No.
>
> Q. Now, when you felt those rocklike substances, <u>what</u> if anything <u>did you believe</u> that was?
>
> A. Crack cocaine.
>
> [(Emphasis added).]

Laboy's testimony reveals little about the size or shape of the bulge he manipulated and the drugs he recovered:

> Q. And can you describe what was recovered from that area?

9

A. He had two bags -- two bags which consisted -- which contained a rocklike substance. And he had nine baggies which were tied together in a rubber band. And each baggie consisted of a wax paper bag with a powdery substance inside the bag.

Q. So this was a larger item that was there?

A. No. No, they were about maybe this big.

Q. The heroin?

A. Yeah, the heroin is not big at all.

Because the bulge was located between defendant's underwear and his pants, retrieval of the item was likely to entail exposing some of defendant's underwear. Laboy understood the search would then be considered a strip search and that he required permission from a station house commander. He received that consent from Sergeant Landi, who had arrived at the scene. Laboy also called for a K-9 unit before leaving to transport defendant to the police station.

At the station, Laboy unbuckled defendant's pants and reached down to his groin area where he recovered two bags containing a rocklike substance and nine baggies containing a powdery substance that were tied together. Laboy was asked again about what he perceived the discovery to be:

Q. And <u>what did you suspect</u> those items to be <u>once you saw them</u>?

A. Crack cocaine and heroin.

10

[(Emphasis added).]

Laboy could not recall if he learned the reason for the outstanding warrant for defendant before or after the strip search. He was unable to say whether he made any effort to determine whether the warrant was for an indictable offense or a disorderly persons offense, let alone the failure to pay a traffic fine. He testified he did not really care what the warrant was for; his "main focus" was to retrieve the items from defendant's groin area.

A summons was issued to defendant for trespassing based upon his driving onto the Days Inn property. The police department had an established procedure to follow regarding suspected trespassers. Laboy testified he followed that procedure; his report did not corroborate that. Laboy was unable to state with certainty that there were any "No Trespassing" signs in the front of the motel. The manager of the motel testified there were none in front and that she would not have called police if a driver merely drove onto the property and departed.

Laboy obtained a search warrant for the vehicle. No drugs were recovered. Instead, a loaded .38 revolver with hollow nose ammunition was seized from the glove compartment.

In denying defendant's motion to suppress the cocaine and heroin, the motion judge found Laboy had probable cause to conduct

11

a traffic stop and arrest defendant on the outstanding warrant. The judge found credible Laboy's testimony that he "found a bulge close to the defendant's groin, between his pants and the underwear, that felt like a rock-like substance," and "<u>immediately recognized</u> that the rock-like substance, based on his training and experience of numerous times feeling the same type of material . . . was crack cocaine."  (Emphasis added).

As to the strip search, the court held probable cause existed due to "the totality of the circumstances that arose during the lawful search[] incident to arrest."  Those circumstances included Laboy's "knowledge of defendant's prior drug activity" and the discovery of "a large amount of money" on the defendant.  The judge found the "plain feel" exception to the warrant requirement was satisfied and therefore, Laboy "was permitted to request a strip search."  Noting the strip search was conducted after permission was granted by the station commander the trial judge erroneously concluded the search was "conducted in accordance with the Attorney General's guidelines."[6]

---

[6] The trial judge was apparently referring to Section III of the Guidelines, which governs the procedures to be followed in conducting a strip search.  Section III(A) states a strip search must be conducted by a "person of same sex . . . in private . . . under sanitary conditions, and . . . in a professional and dignified manner, and [when in] custodial confinement, conducted in accordance with Department of Corrections regulations." <u>Guidelines</u>, <u>supra</u>, Section III(A).  As we discuss, <u>infra</u>, Section

12

III.

"The touchstone of the Fourth Amendment is reasonableness." United States v. Knights, 534 U.S. 112, 118, 122 S. Ct. 587, 591; 151 L. Ed. 2d 497, 505 (2001); see also State v. Gonzales, 227 N.J. 77, 104 (2016) (stating "a standard of objective reasonableness governs the validity of searches and seizures under both our Federal and State Constitutions"); State v. Watts, 223 N.J. 503, 514-15 (2015); State v. Hathaway, 222 N.J. 453, 476 (2015); State v. Bruzzese, 94 N.J. 210, 219 (1983), cert. denied, 456 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984). We conduct a fact-sensitive review of each phase of the encounter between police and suspect, "consider[ing] the circumstances facing the officers who had to make on-the-spot decisions in a fluid situation." Watts, supra, 223 N.J. at 514. We uphold those factual findings of the trial judge that are "supported by sufficient credible evidence in the record," State v. Elders, 192 N.J. 224, 243 (2007) (citation omitted), and are not bound to accept findings that are "clearly mistaken" based on our independent review of the record, id. at 244. Issues of law are reviewed de novo. See Watts, supra, 223 N.J. at 516.

_____

II of the Guidelines establishes prerequisites that must be satisfied before a strip search is permitted and which were not satisfied here.

A-0489-14T1

"[A] single encounter may escalate from 'inquiry' to 'stop' to 'arrest' so that the criteria for each category must be applied as the situation shades off from one category to the other." State v. Harris, 384 N.J. Super. 29, 45 (App. Div.) (quoting State v. Alexander, 191 N.J. Super. 573, 577 (App. Div. 1983), certif. denied, 96 N.J. 267 (1984)), certif. denied, 188 N.J. 357 (2006). Thus, an encounter that begins with a valid arrest or investigative stop may lead to a seizure that will be suppressed because the officer has unreasonably expanded the permissible scope of an otherwise valid search. See, e.g., State v. Privott, 203 N.J. 16, 28-32 (2010) (concluding the officer unreasonably expanded the permissible scope of the search when he lifted defendant's shirt after conducting a proper investigative stop and protective patdown); Harris, supra, 384 N.J. Super. at 48-49 (finding officers' initial approach of defendant, request that he spit out the substance in his mouth, arrest and search incident to arrest were reasonable, but concluding officers lacked probable cause to believe there were additional drugs hidden in other body parts to justify a strip search).

Because the search required to remove the object from defendant's clothing required "the removal or rearrangement of clothing for the purpose of visual inspection of the person's undergarments," it fell within the definition of a strip search,

14

N.J.S.A. 2A:161A-3, and was subject to the requirements of N.J.S.A. 2A:161A-1. The statute "is prophylactic, designed to protect citizens from an intrusive and degrading invasion of privacy." Hayes, supra, 327 N.J. Super. at 384. We have observed that this statute "was adopted to provide greater protection than is afforded by the Fourth Amendment," noting that "a statute providing rights coextensive with constitutional protections would be superfluous." Id. at 381; see also Harris, supra, 384 N.J. Super. at 49.

Pursuant to N.J.S.A. 2A:161A-1,

> [a] person who has been detained or arrested for commission of an offense other than a crime shall not be subjected to a strip search unless:
>
> a. The search is authorized by a warrant or consent;
>
> b. The search is based on probable cause that a weapon, controlled dangerous substance . . . or evidence of a crime will be found and a recognized exception to the warrant requirement exists; or
>
> c. The person is lawfully confined in a municipal detention facility or an adult county correctional facility and the search is based on a reasonable suspicion that a weapon, controlled dangerous substance . . . or contraband, as defined by the Department of Corrections, will be found, and the search is authorized pursuant to regulations promulgated by the Commissioner of the Department of Corrections.
>
> [(Emphasis added).]

15

Therefore, the statutory criteria that had to be met for a strip search under the circumstances here were: probable cause and the application of a recognized exception to the warrant requirement. N.J.S.A. 2A:161A-1(b). It is undisputed that Officer Laboy had probable cause to believe defendant was concealing contraband upon touching the bulge in defendant's groin area. We therefore proceed to analyze whether a recognized exception to the warrant requirement applied and whether it was objectively reasonable to conduct a strip search under the circumstances here.

A.

The search in this case was one incident to arrest, which may not be relied upon as the recognized exception to the warrant requirement to satisfy the second criteria of subsection 2A:161A-1(b). Hayes, supra, 327 N.J. Super. at 378. In Hayes, we reasoned, "the strip search statute's protections are triggered by an arrest. An arrest alone, therefore, cannot be both the event invoking the protections as well as the event nullifying them." Ibid. We also rejected the State's contention that the lack of sufficient time to obtain a warrant "and the likelihood that the defendant would continue to conceal or otherwise dispose of the evidence creates an exigency justifying a warrantless search under [N.J.S.A. 2A:161A-1(b)]." Ibid. We noted that if this contention were accepted, "it would effectively nullify the statutory protection

16

afforded to persons detained or arrested for non-criminal offenses." Ibid.

The State argues that the "plain feel" exception to the warrant requirement applied here, constituting a "recognized exception to the warrant requirement." Defendant contends the plain feel exception "is not properly understood as an exception to the warrant requirement" and therefore cannot be a foundation for the "substantial additional intrusion" of a strip search. He argues further that even if accepted as an exception to the warrant requirement, the application of a plain feel exception in strip search cases would nullify the protections of the strip search statute because "any time an officer felt what he suspected to be drugs during a pat down, he would automatically be justified in conducting a strip search."

Contrary to defendant's assertion, one year after the Supreme Court decided Dickerson, this court adopted the plain touch exception to the warrant requirement, holding:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

17

> [Jackson, supra, 276 N.J. Super. at 630-31
> (quoting Dickerson, supra, 508 U.S. at 375-
> 76, 113 S. Ct. at 2137, 124 L. Ed. 2d at 346
> (1993)).]

We explained that the plain feel exception is "a corollary to the plain view doctrine,"[7] and thus the same public policy concerns undergirding the plain view exception applied. See id. at 628, 630-31; see also State v. Toth, 321 N.J. Super. 609, 615 (App. Div. 1999) (stating "[t]here is no reason in law, logic, or policy that would justify a different analysis when analyzing plain feel matters"), certif. denied, 165 N.J. 531 (2000); State v. Cargill, 312 N.J. Super. 13, 17 (App. Div.) (finding "plain touch" exception to warrant requirement applied), certif. denied, 156 N.J. 408 (1998).

To be sure, the application of the plain feel exception as a gateway to strip searches conjures concerns regarding the nullification of the very protections N.J.S.A. 2A:161A-1 was

---

[7] In Gonzales, supra, 227 N.J. at 90, 95-97, our Supreme Court reviewed the plain view exception to the warrant requirement under Article I, Paragraph 7 of the New Jersey Constitution, discarded the prior requirement that evidence be discovered inadvertently to conform to federal jurisprudence, id. at 99-100, and identified the following criteria for its application: "the officer must lawfully be in the area where he observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime." Id. at 101 (emphasis added).

18

designed to afford.[8]  It bears noting that "the reasonableness of

a search is determined 'by assessing, on the one hand, the degree

to which it intrudes upon an individual's privacy and, on the

other, the degree to which it is needed for the promotion of

legitimate governmental interests.'"  Knights, supra, 534 U.S. at

118-119, 122 S. Ct. at 591; 151 L. Ed. 2d at 505 (quoting Wyoming

v. Houghton, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300, 143 L. Ed.

2d 408, 414 (1999)).

We are guided by the Supreme Court's application of the plain

feel doctrine in Dickerson, supra, 508 U.S. at 366, 113 S. Ct. at

2130, 124 L. Ed. 2d at 334, a case that did not entail the

significant intrusion of a strip search but only the admissibility

of contraband detected during a patdown search conducted pursuant

to Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889

(1968).  No weapons were recovered but, the Court noted, "the

---

[8]  In Hayes, supra, 327 N.J. Super. at 378, our concern regarding
the nullification of the strip search statute's protections
extended to our consideration of section 1(c) of the statute.  We
concluded, "an investigative detention to permit the police to
search for outstanding arrest warrants, regardless of the time it
takes, does not render a suspect 'lawfully confined' within the
meaning of section 1c of the statute."  Id. at 383; see also Anne
Bowen Poulin, The Plain Feel Doctrine and the Evolution of the
Fourth Amendment, 42 Vill. L. Rev. 741, 742 (1997) ("Whether the
'plain feel' exception under Dickerson encourages more invasive
but unfruitful searches is an elusive and troublesome question.").

officer conducting the search did take an interest in a small lump in respondent's nylon jacket." Dickerson, supra, 508 U.S. at 369, 113 S. Ct. at 2133, 124 L. Ed. 2d at 341. The officer testified that after feeling the "small lump," he "examined it with [his] fingers and it slid and it felt to be a lump of crack cocaine in cellophane." Ibid.

The Court reaffirmed the principle that officers conducting a protective patdown search for weapons may seize contraband detected during that search "so long as the officers' search stays within the bounds marked by Terry." Id. at 373, 113 S. Ct. at 2136, 124 L. Ed. 2d at 344. However, the Court also emphasized that, for the plain feel exception to apply, the incriminating character of the object must be "immediately apparent." Ibid.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
>
> [Id. at 375-76, 113 S. Ct. at 2137, 124 L. Ed. 2d at 346 (emphasis added).]

Applying these principles, the Court concluded the seizure of the cocaine from the respondent's pocket could not be justified under the plain feel doctrine:

20

> [T]he officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "the sole justification of the search [under <u>Terry</u>:] . . . the protection of the police officer and others nearby." It therefore amounted to the sort of evidentiary search that <u>Terry</u> expressly refused to authorize, and that we have condemned in subsequent cases.
>
> [<u>Id.</u> at 378, 113 <u>S. Ct.</u> at 2138-39, 124 <u>L. Ed.</u> 2d at 347-48 (alterations in original) (citations omitted).]

Similarly, we find the record here does not support an application of the plain feel doctrine.[9]

A threshold requirement for the application of the plain feel exception is that the character of the contraband be "immediately apparent." See <u>id.</u> at 375, 113 <u>S. Ct.</u> at 2137, 124 <u>L. Ed.</u> 2d at 345. Although the trial judge made this finding, that conclusion is not supported by the record. Laboy never testified it was "immediately apparent" to him that the bulge concealed drugs. Laboy stated he felt the bulge in defendant's groin area and manipulated it. He said the bulge "felt like a rocklike substance" and that when he felt the rocklike substance, he "believe[d]" it was "[c]rack cocaine." When he viewed the substances retrieved, he "suspect[ed]" them to be "[c]rack cocaine and heroin."

---

[9] Therefore, we need not address the issue raised by defendant - that the plain feel exception should not be available to justify a strip search under <u>N.J.S.A.</u> 2A:161A-1.

21

We recognize that the line between "immediately apparent" and "probable cause" is easily blurred. Given the significant intrusion of a strip search, the authority provided by N.J.S.A. 2A:161A-1 should not turn on whether the officer utters the correct talismanic words. Rather than making a conclusory statement, the officer should articulate specific facts that support his assertion that the nature of the contraband was immediately apparent.

By way of example, both our court and the Supreme Court found the plain feel doctrine applicable when the officer conducting a lawful search "feels an object whose contour or mass makes its identity immediately apparent." Dickerson, supra, 508 U.S. at 375, 113 S. Ct. at 2137, 124 L. Ed. 2d at 345; Jackson, supra, 276 N.J. Super. at 630-31. The size and shape of the contraband can be independently assessed by the court's inspection of the physical evidence and give credence to or cast doubt upon the officer's assertion that its identity was "immediately apparent" with a mere touch. See Poulin, supra, at 787-88. The officer's knowledge that the arrestee has concealed drugs on his person in the past may also contribute to the officer's immediate realization that the bulge he touched was drugs. See Harris, supra, 384 N.J. Super. at 48-49; Hayes, supra, 327 N.J. Super. at 378.

The record here fails to provide details to support a finding that the character of the bulge was immediately apparent. Although the location of the bulge here was a fact that gave cause for suspicion, see Harris, supra, 384 N.J. Super. at 47-48, there was no known history that defendant had concealed drugs on his person. Defendant was not under investigation for any drug activity and the only testimony regarding drugs was that defendant had possessed marijuana in the past. The record also fails to establish that the size of the bulge was remarkable in any way. Indeed, Laboy testified that the heroin "was not that big."

More important, the manipulation of the bulge cannot be divorced from the tactile information that formed the basis for Laboy's belief that the bulge was drugs. In Dickerson, supra, 508 U.S. at 378, 113 S. Ct. at 2138-39, 124 L. Ed. 2d at 347-48, the Supreme Court rejected the application of the plain feel exception because the officer exceeded the permissible scope of a Terry stop when he manipulated the bulge after concluding it was not a weapon. Here, too, the perception that the bulge concealed drugs was made after the bulge was manipulated, not upon a mere touch in which the nature of the concealed object was immediately apparent. The threshold requirement of the plain feel exception to the warrant exception was not met.

23

We therefore conclude that the plain feel doctrine does not apply here to satisfy the statutory criteria for a strip search, N.J.S.A. 2A:161A-1(b), and that to do so under the circumstances here would place the protections afforded by that statute in jeopardy. See Dickerson, supra, 508 U.S. at 378, 113 S. Ct. at 2138, 124 L. Ed. 2d at 347 (quoting Texas v. Brown, 460 U.S. 730, 748, 103 S. Ct. 1535, 1547; 75 L. Ed. 2d 502, 518 (1983) (Stevens, J., concurring) (noting the danger that an officer executing a valid search "will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will"); Hayes, supra, 327 N.J. Super. at 378.

## B.

Based upon our review of the record, we also conclude the drugs seized from defendant's person must be suppressed because the police conduct was not objectively reasonable.

A factor to be considered in assessing the reasonableness of the search is the basis for the arrest "in light of 'the facts known to the law enforcement officer at the time of the search.'" State v. Handy, 206 N.J. 39, 47 (2011) (quoting Bruzzese, supra, 94 N.J. at 221). Laboy testified that, at the time of defendant's arrest, defendant was not under investigation for any crime and

24

he was not stopped with the expectation that he had drugs in his possession.

Although the basis for the warrant was unknown, the fact it was for a failure to pay a $6.50 fine was knowable. Laboy testified he remained at the scene with defendant for ten to fifteen minutes before transporting him to the police station. While at the scene, he confirmed that the warrant remained active, called for a K-9 unit and for his station commander, who arrived at the scene and gave his authorization for a strip search before Laboy left with defendant. No reason was offered as to why the basis for the active warrant was not determined then or at any time before the strip search.

When officers have probable cause to believe that evidence exists and will only be recovered through a strip search, the mechanics for effecting the strip search will entail transporting the suspect to a secure location where the search may be conducted in compliance with Section III of the Attorney General Guidelines. This procedure will necessarily require additional time to complete and the suspect will be under police observation throughout. As a result, it would appear that, barring exceptional circumstances, the arrestee will have scant opportunity to destroy or discard evidence undetected by police.

25

We also find it significant to our assessment that the officers failed to comply with the Attorney General's Guidelines for strip searches. As the chief law enforcement officer of this State, the Attorney General is authorized to provide for "uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State," N.J.S.A. 52:17B-98, and explicitly authorized to issue guidelines applicable to the strip search conducted here. N.J.S.A. 2A:161A-8b. The Attorney General Guidelines govern the performance of strip and body cavity searches for both the non-indictable offenses covered by N.J.S.A. 2A:161A-1 and for crimes. The Guidelines are "binding and enforceable on local law enforcement agencies." O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 383 (App. Div. 2009) (citing In re Carroll, 339 N.J. Super. 429, 442-43 (App. Div.), certif. denied, 170 N.J. 85 (2001)).

The Attorney General Guidelines do not dictate the disposition of the issue at hand but they merit our consideration in determining whether the police conduct here was objectively reasonable. See State v. Dangerfield, 171 N.J. 446, 457-58 (2002) (criticizing officers' failure to follow established police procedure for determining whether defendant was lawfully on the premises and concluding police lacked probable cause to arrest for defiant trespass).

The Guidelines establish more exacting requirements for a strip search than those established by N.J.S.A. 2A:161-1A. When, as here, the person is detained or arrested without custodial confinement,[10] and there are no exigent circumstances,[11] the requirements for a strip search are:

> (1) Search warrant or consent, and
>
> (2) Authorized by officer in charge of the station house.
>
> [Guidelines, supra, Section II(A)(1)(a).]

Therefore, while N.J.S.A. 2A:161A-1(b) would permit a strip search upon a finding of probable cause and a recognized exception to the warrant requirement, the Attorney General Guidelines

---

[10] Custodial confinement pertains to N.J.S.A. 2A:161-1A(c). The State does not contend that this subsection applies here and it is evident that subsection (c) does not apply. See Hayes, supra, 327 N.J. Super. at 383.

[11] When there are exigent circumstances, the Guidelines permit the strip search of an arrestee if the following exist:

> (1) Probable cause to believe that the person is concealing a weapon, contraband or evidence of crime, and
>
> (2) Exigent circumstances prevent obtaining a search warrant or approval of officer in charge.
>
> [Guidelines, supra, Section II(A)(1)(b).]

The State does not contend that the failure to obtain a warrant for the strip search was excused by exigent circumstances.

27

completely eliminate subsection (b) as a basis for permitting a strip search in the absence of exigent circumstances. Stated simply, the officers here had to obtain a warrant for the strip search in order to comply with the Attorney General's Guidelines.

We also note that the justification for plain feel as an exception to the warrant requirement is based in part on "the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment." Dickerson, supra, 508 U.S. at 375, 113 S. Ct. at 2137, 124 L. Ed. 2d at 345-46. We find that justification absent here. There were no exigent circumstances. There was sufficient time to obtain a K-9 reaction to the vehicle defendant was driving. The defendant was detained at the arrest scene for ten to fifteen minutes and then had to be transported to the police station before any strip search could be conducted. Although the record is unclear as to when the search warrant for the vehicle was obtained, the officers did obtain a search warrant for the automobile. Therefore, the facts do not suggest it was impracticable to resort to a neutral magistrate. And, comparing the levels of intrusion occasioned by an automobile search and a strip search, reason fails to reconcile how the objectives of the Fourth Amendment are served by permitting a

28

warrantless strip search when a warrant to search an automobile was obtainable and obtained.

In sum, the record fails to establish that the plain feel exception to the warrant requirement justifies the warrantless strip search here. Further, our assessment of the totality of the circumstances leads us to conclude the search was not objectively reasonable. Therefore, the drugs seized from defendant's person must be suppressed and the convictions based upon that seizure, counts two, three, four, five and seven, are reversed.

## IV.

As a result, defendant's remaining convictions arise from the seizure of a handgun and hollow nose bullets from the automobile, counts one, six and eight. Our review of the record leads us to conclude these convictions may not be left undisturbed.

## A.

The handgun and bullets were seized from the automobile following a search authorized by a search warrant. Defendant argues this evidence must be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S. Ct. 407, 417 9 L. Ed. 2d 441, 455 (1963). The State counters defendant's argument by submitting the seizure from the automobile was made pursuant to a valid search warrant and should not be suppressed.

29

"The exclusionary rule generally bars the State from introducing into evidence the 'fruits' of an unconstitutional search or seizure." State v. Shaw, 213 N.J. 398, 412-13 (2012) (citing Wong Sun, supra, 371 U.S. at 485, 83 S. Ct. at 416, 9 L. Ed. 2d at 454). In determining whether the evidence seized from the automobile must be suppressed, the issue is whether that seizure "was a product of the 'exploitation of [the primary] illegality'" — the unlawful strip search — "or of 'means sufficiently distinguishable to be purged of the primary taint' . . . ." Id. at 413 (alteration in original) (quoting Wong Sun, supra, 371 U.S. at 488, 83 S. Ct. at 417, 9 L. Ed. 2d at 455).

We recognize that a search warrant is presumed to be valid and that our "role is not to determine anew whether there was probable cause for issuance of the warrant, but rather, whether there is evidence to support the finding made by the warrant-issuing judge." State v. Chippero, 201 N.J. 14, 20-21 (2009).

The record here does not permit us to perform that function. The affidavit in support of the search warrant is not included in the record and it is unclear when the warrant was sought, specifically — whether it was before or after the strip search. The minimal evidence regarding the K-9 sniff procedure is unilluminating:

Q [DEFENSE COUNSEL]: Now, Officer, at some point K-9 was called to the scene; is that correct?

A [LABOY]: That's correct.

Q: Were you present at the scene when K-9 was called? Who — . . .

A: Yeah, I called them. I was at the scene when I called them.

Q: Okay. And was — did K-9 arrive at the scene when you were there? . . .

A: From what I can — from what I can remember, no. [H]e was already taken to the station. Sergeant Landi arrived on scene. I explained to Sergeant Landi the situation. He gave consent to strip search [defendant]. I took [defendant] back to the station. Sergeant Landi briefed the K-9 officers on what we were doing.

Q. So in short, [defendant] was not at the scene when the K-9 came in?

A. That's correct. . . .

Q. And because of that, you procured a search warrant; correct?

A. That is correct.

Q. And no drugs were found from the -- from the car, though; right?

A. Not that I recall; no.

Q. Okay. But it was a positive hit for drugs that the K-9 g[ot]; right?

A. That is correct.

31

A-0489-14T1

On this record, we cannot discern to what degree the affidavit relied upon the illegal strip search.

We therefore remand this issue to the trial court to determine whether the seizure from the automobile "was a product of the 'exploitation of [the primary] illegality'" — the unlawful strip search — "or of 'means sufficiently distinguishable to be purged of the primary taint.'"  Shaw, supra, 213 N.J. at 413 (quoting Wong Sun, supra, 371 U.S. at 488, 83 S. Ct. at 417, 9 L. Ed. 2d at 455).

### B.

The trial was suffused with evidence that related only to the possession of drugs we have now suppressed.  That evidence included the prejudicial use of a hypothetical to the State's expert in "general narcotics trafficking, packaging, values, distribution and law enforcement interdiction of narcotics," opinion testimony that is now prohibited pursuant to State v. Cain, 224 N.J. 410, 429 (2016).  The net effect is that a trial that may have been properly conducted to determine defendant's guilt on the weapons offenses, depending on the validity of the search warrant, was weighted down to a substantial degree by evidence that had the capacity to prejudice defendant.  Based upon the facts and circumstances of this case, we conclude that defendant is entitled

32

to a new trial on counts one, six and eight and therefore reverse his convictions on those counts.

V.

Finally, we address the argument raised in defendant's pro se supplemental brief that he was denied a fair trial because his feet were shackled and chained to the floor by his ankles on the second day of trial. The court, defense counsel and defendant engaged in the following colloquy:

> [DEFENSE COUNSEL]: -- see that he is chained. His foot is chained. I'm -- I want to make sure to put that on the record. We didn't do that last time.
>
> [DEFENDANT]: You have murderers in here that don't even be fucking chained.
>
> [SHERIFF'S OFFICER]: Judge, we have that on once the jury is picked. We always do that. Every single trial, we've done that, sir.
>
> [THE COURT]: The -- you're talking about security. I do not interfere on what's actually necessary with the Sheriff's rules about security. That's not something that I can do with ease.
> So the issue is that in -- so that the record is reasonably clear, the practice is with an incarcerated Defendant, the Sheriff has a shackle on the ankle to, I guess, hook in the floor that is not visible to the jury.
>
> . . .
>
> [DEFENSE COUNSEL]: Judge, I guess that's one of my objections that, you know, he's obviously tethered. The jury, they're going to be able to see that he has a chain.

33

A-0489-14T1

[THE COURT]: I've tried any number of cases. They're not able to see it. What we do is, so that we don't have a problem, is when the -- as the jury's walking in, I tell them everybody remain seated, and you lawyers don't get up like you usually do for the jury. . . . And then when the jury leaves, I always say, everyone remain seated while the jury leaves the room. Don't you lawyers get up because that way, [defendant] doesn't have to get up or look as if he's being disrespectful.

A trial court "may not require a defendant to appear before the jury in restraints absent compelling reasons." State v. Artwell, 177 N.J. 526, 534 (2003). Despite this "sharply limited" discretion, State v. Damon, 286 N.J. Super. 492, 499 (App. Div. 1996) (quoting State v. Roberts, 86 N.J. Super. 159, 164 (App. Div. 1965)), a court may exercise its discretion to order restraints "when a defendant exhibits violent conduct at the time of trial or threatens escape" or under "other circumstances," such as when "defendant's character, reputation, or criminal record may indicate a need for physical restraints." State v. Mance, 300 N.J. Super. 37, 50-51 (App. Div. 1997).

The record fails to show any independent finding by the trial judge that defendant's conduct in the courtroom or other circumstances suggested a need for physical restraints. The fact that it is the sheriff's practice to shackle incarcerated defendants during trial is wholly insufficient as a substitute for such a finding. In light of our decision, reversing defendant's

34

convictions, we need not determine whether defendant was prejudiced by this error.

Reversed and remanded for additional proceedings as set forth in this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

35