**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0202-17T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DOUGLAS T. SHORTER,

    Defendant-Respondent.

_____

Submitted March 21, 2018 — Decided June 15, 2018

Before Judges Alvarez and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment No.
17-01-0022.

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for appellant (Carey J.
Huff, Assistant Prosecutor, of counsel and on
the brief).

Hobbie, Corrigan & Bertucio, PC, attorneys for
respondent (Edward C. Bertucio, of counsel and
on the brief; Elyse S. Schindel, on the
brief).

PER CURIAM

    The State of New Jersey, on leave granted, appeals a Law

Division judge's July 26, 2017 decision granting a motion to

suppress evidence. After our review of the relevant motion testimony and precedents, we reverse and remand for further proceedings.

Officers Sean DeShader and Joe Leon of the Asbury Park Police were on patrol the afternoon of July 9, 2016, in an unmarked vehicle in a high-crime area. DeShader was a thirteen-year veteran of the department who had participated in hundreds of heroin investigations over the course of his career. The officers saw a car bearing Massachusetts license plates, and DeShader immediately recognized one of the occupants, defendant Douglas Shorter, from an arrest days earlier on a drug paraphernalia offense. DeShader knew defendant had an outstanding arrest warrant.

Once the officers stopped the vehicle, DeShader noticed defendant repeatedly looking backwards towards the officers and leaning towards the center console, the floor, and the passenger's side door. As the officers approached, defendant appeared extremely nervous. DeShader asked defendant to step out of the car and noticed defendant anxiously looking around while his chest visibly rose and fell. While patting down and cuffing defendant under the authority of the warrant, DeShader asked him if he had anything that would "poke [him], prick [him], or stick [him]." Defendant responded that he had "a little bit of Molly," which

DeShader understood to mean ecstasy based on his training and experience. When he searched defendant, DeShader found sixty-eight white glassine bags stamped "Black Ink," containing suspected heroin, as well as a knotted white plastic bag, which DeShader believed contained ecstasy. DeShader also found two folds of money totaling $799.

As the officers awaited the arrival of a marked patrol vehicle, Leon drew DeShader's attention to a brown-colored box protruding from the open front passenger's side door. The box, located inside the front passenger door pocket, was approximately the size of a bible and could fit into a cargo pocket. On the box, DeShader could see a red stamp with the word "Empire." He testified:

> [r]ed stamp is commonly used to be put on boxes or bags in reference [to] an indication of heroin. Brown box is commonly known to [him] to contain 600 white [glassine] bags which is used in the production and packaging of heroin for street ready drug sales.

Leon handed the box to DeShader, which contained ten bricks of heroin. Each of the 499 bags inside the box were stamped with the word "Empire" in red. The driver consented to a search of the vehicle and identified a Samsung smart phone as belonging to defendant.

The judge found the officer to have been "an honest and candid witness." However, he concluded that seizing the Empire cardboard box and opening it was based on more than a hunch but "far shy of the probable cause necessary to justify that seizure under the plain view exception to the warrant requirement."

On appeal, the State contends:

> POINT I
> SUPPRESSION OF THE EVIDENCE RECOVERED FROM THE CAR WAS ERROR BECAUSE THERE WAS PROBABLE CAUSE TO SEARCH THE CAR.
>
> POINT II
> THERE WAS PROBABLE CAUSE TO ASSOCIATE THE BOX WITH CRIMINAL ACTIVITY, THUS, THE SUPPRESSION WAS IN ERROR.

I.

In reviewing a motion to suppress, this court defers to the trial court's fact and credibility findings so long as those findings are "supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We review such decisions deferentially because the "findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). An appellate court should disregard those findings only upon a

"showing of an abuse of discretion, i.e. [that] there has been a clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). "Although the ordinary 'abuse of discretion' standard defies precise definition, it arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (citations omitted).

No deference is given to the trial court's legal conclusions. Nantambu, 221 N.J. at 402. The legal conclusions of a trial court are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

We conclude that the State's proofs established an exception to the warrant requirement by a preponderance of the evidence. See State v. Minitee, 210 N.J. 307 (2012) (citations omitted). That exception is a police officer's right to lawfully "seize evidence or contraband that is in plain view." State v. Gonzales, 227 N.J. 77, 90 (2016) (citing State v. Bruzzese, 94 N.J. 210, 235-36 (1983)).

An officer may seize evidence in plain view if the following three requirements are satisfied:

> First, the police officer must be lawfully in the viewing area.
>
> Second, the officer has to discover the evidence 'inadvertently,' meaning that he did

not know in advance where evidence was located nor intend beforehand to seize it.

Third, it has to be 'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.

[State v. Mann, 203 N.J. 328, 341 (quoting Bruzzese, 94 N.J. at 236)].

In Gonzalez, the Supreme Court "reject[ed] the inadvertence prong of the plain-view doctrine because it requires an inquiry into a police officer's motives and therefore is at odds with the standard of objective reasonableness that governs [the Court's] analysis of a police officer's conduct." 227 N.J. at 99. Since the motor vehicle stop in this case occurred before the Gonzalez decision, we assess the lawfulness of the seizure pursuant to the three-prong standard that existed prior to the decision in Gonzalez. 227 N.J. at 101 (applying the new standard "prospectively").

The first requirement of the plain-view exception requires little discussion. The officers were executing an arrest warrant upon the passenger of the vehicle and were therefore in the area lawfully.

The second prong also merits very brief discussion. The purpose of this stop was to take defendant into custody on an

unrelated matter, not for any reason related to the advancement of a drug investigation.

In our view, the State met the third prong as well. DeShader, whom the court found credible, testified that in his experience, stamped cardboard boxes like the one in this case would at a minimum contain drug paraphernalia. The officer had charged defendant with possession of similar items days earlier.

It has been consistently held "that a principal component of . . . probable cause . . . 'is a well-grounded suspicion that a crime has been or is being committed.'" State v. Moore, 181 N.J. 40, 45 (2004) (quoting State v. Nishina, 175 N.J. 502, 515 (2003)). This officer's familiarity with similar boxes containing drugs and drug paraphernalia gave rise to his "well-grounded suspicion" that a drug offense had been or was being committed. See ibid. The totality of the circumstances gave rise to probable cause to seize the box. DeShader knew defendant, found drugs on his person, saw the box, and recognized the likely nature of its contents. In the context of the plain-view exception, "[a]ll [an] officer needs to meet the third requirement is [a] practical, nontechnical, probability that incriminating evidence is involved." State v. Reininger, 430 N.J. Super. 517, 536 (App. Div. 2013) (third alteration in original) (citations omitted) (quoting Bruzzese, 94 N.J. at 237). The probability existed here.

A-0202-17T4

The judge seemed concerned that despite the officer's description of the Empire stamp as very consequential in that context, the testimony was not enough because the item was an opaque cardboard box. "[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view," Johnson, 171 N.J. at 213 (quoting United States v. Ross, 456 U.S. 798, 822-23 (1982)).

But on the other hand, "[i]t cannot be denied that 'a police officer lawfully in the viewing area [is not required to] close his eyes to suspicious evidence in plain view." Id. at 208 (alteration in original) (quoting Bruzzese, 94 N.J. at 237). "Whether the [container] . . . concealed its contents from plain view is a factor to be considered when determining whether the State established probable cause before seizing and opening the container." Id. at 214.

Defendant made furtive movements as the officers approached. He was extremely anxious. DeShader knew defendant from a prior arrest. Defendant had drugs on his person when arrested on the scene. In this context, DeShader's training and experience gave him the unique familiarity with drug-related items that signaled the contents of the box even though he obviously could not see through it. See State v. Evans, 449 N.J. Super. 66, 78-79 (App. Div. 2017) (holding probable cause existed to conduct a strip

search when a search incident revealed the defendant had crack cocaine on his person); State v. Rosario, 229 N.J. 263, 276-77 (2017) (quoting State v. Lund, 119 N.J. 35, 48 (1990)) (restating the principle that "there are some cases in which 'furtive' movements or gestures . . . accompanied by other circumstances, will ripen into . . . probable cause to believe that the person possesses criminal contraband"); Moore, 181 N.J. at 46 (finding the court may consider any evidence concerning the high crime reputation of an area in the totality of the circumstances); State v. Hayes, 327 N.J. Super. 373, 380 (App. Div. 2000) (holding police may rely on their knowledge of a suspect's "prior arrest [and conviction] record"); Johnson, 171 N.J. at 219 (holding the criminal nature of a container is immediately apparent when "outward appearance of the [container] gave the officer a degree of certainty that was functionally equivalent to the plain view of crack-cocaine itself"). Thus, DeShader had probable cause to seize the box, and its contents should not have been suppressed.

We do not reach the parties' other arguments and legal contentions. They are moot in light of this decision.

Reversed and remanded for further proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0202-17T4