743 A.2d 378 (2000)
327 N.J.Super. 373
STATE of New Jersey, Plaintiff-Respondent,
v.
Marcus HAYES, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 9, 1999.
Decided January 19, 2000.
*379 Ivelisse Torres, Public Defender, for defendant-appellant (Theresa Yvette Kyles, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for plaintiff-respondent (H. John Witman, III, Deputy Attorney General, of counsel and on the brief).
Before Judges D'ANNUNZIO, NEWMAN and FALL.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Tried to a jury under Atlantic County Indictment No. 96-10-2357-B, defendant was convicted of possession of more than one-half ounce of cocaine with intent to distribute it, tampering with evidence, and using a remotely-activated paging device while engaged in the commission of a drug related offense. The court sentenced defendant to an extended term of twenty years' imprisonment with a ten-year period of parole ineligibility for possession with intent to distribute and to consecutive eighteen month terms of imprisonment for the tampering and paging-device counts. The aggregate term, therefore, is twenty-three *380 years. Defendant appeals, contending that evidence seized as a result of a strip search should have been suppressed.
On September 24, 1996 at 7:00 p.m., Detectives Knights, Barber and Thomas of the Atlantic City Police Department were in a police vehicle when they observed defendant, Marcus Hayes, on Virginia Avenue. Defendant was known to them, and they also knew that there was an outstanding warrant for his arrest. As the detectives emerged from their vehicle, defendant recognized them, threw up his hands and said "you got me." The detectives handcuffed defendant behind his back. A pat-down revealed an activated paging device and cash in excess of $1,000, but no evidence of a weapon.
Defendant was placed in the police vehicle and became belligerent. He threatened the detectives and verbally abused them. Knights and Barber testified that defendant was squirming in the back seat and moving his hips. At the same time, they observed defendant attempt to place his cuffed hands down the back of his pants.
Detectives Knights and Barber knew defendant was a drug offender. Knights had arrested defendant as a juvenile for a drug offense, and was aware of defendant's arrest history. Knights testified that a confidential informant had told him that defendant frequented the area of Maryland and Virginia Avenues and "drops off his package around a certain time; if he's carrying a package, it's going to be down his pants."
Knights also explained that he had experience with persons storing contraband in the back of their pants. Knights was convinced that defendant was trying to conceal drugs in his pants and, therefore, decided to do a strip search when they arrived at the police station.
Knights testified that when they placed defendant in the police car they received a communication indicating that the warrant they had executed was for a motor vehicle violation. The bail had been set at $1,000, and defendant had sufficient cash in his pocket to satisfy the bail requirement.
Sergeant Abrams signed a strip search authorization at the police station. Abrams knew defendant and had arrested him as a juvenile. On that occasion, defendant had been in possession of drugs "stuffed ... down the back of his pants." Defendant had also been arrested for possession of a .25 caliber handgun found down the front of his pants. Abrams testified that he knew of other arrests of defendant and that defendant had been the target of numerous investigations and was known as a drug dealer.
Once Abrams had authorized the strip search, Knights ordered defendant into a room. Knowing that he was going to be strip-searched, defendant began removing his clothing before ordered to do so. Defendant complied with Knights' instructions to bend over and Knights observed a "plastic baggie, a white powdery substance; [it] looked like a big knot was jammed in his [anus]." At Knights' order, defendant removed the package, ripping it open and "smash[ing] cocaine into the floor."
In addition to constitutional limitations on police searches, strip searches and "body cavity" searches are regulated by statute. Both parties have characterized the search of defendant as a "strip search." N.J.S.A. 2A:161A-1 provides:
A person who has been detained or arrested for commission of an offense other than a crime shall not be subjected to a strip search unless:
a. The search is authorized by a warrant or consent;
b. The search is based on probable cause that a weapon, controlled dangerous substance, as defined by the "Comprehensive Drug Reform Act of 1987," N.J.S. 2C:35-1 et al., or evidence of a crime will be found and a recognized exception to the warrant requirement exists; or *381 c. The person is lawfully confined in a municipal detention facility or an adult county correctional facility and the search is based on a reasonable suspicion that a weapon, controlled dangerous substance, as defined by the "Comprehensive Drug Reform Act of 1987," N.J.S. 2C:35-1 et al., or contraband, as defined by the Department of Corrections, will be found, and the search is authorized pursuant to regulations promulgated by the Commissioner of the Department of Corrections.
Section 1a is not applicable because there was no search warrant and defendant did not consent. Section 1b requires probable cause and "a recognized exception to the warrant requirement." The motion judge found that the police had probable cause to believe that defendant was concealing drugs on his body. This finding is supported by substantial credible evidence in the record, see State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964), including defendant's behavior in the police vehicle, the detectives' experience and the detectives' awareness of defendant's criminal history and concealment methods. Cf. State v. Valentine, 134 N.J. 536, 547-48, 636 A.2d 505 (1994) (holding that "an officer's knowledge of a suspect's prior criminal activity in combination with other factors may lead to a reasonable suspicion that suspect is armed and dangerous."); United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723, 733 (1971) (ruling that in assessing the reliability of an informant's tip, police may rely on their knowledge of a suspect's reputation (plurality opinion)).
The motion judge, however, did not address the second requirement of subsection 1b, the existence of an exception to the warrant requirement. We perceive no exception in this case.
The police may perform a warrantless search of a person incident to an arrest. See United States v. Edwards, 415 U.S. 800, 94 S.Ct., 1234, 39 L.Ed.2d 771 (1974); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Defendant was arrested on the motor vehicle warrant. But the strip search statute's protections are triggered by an arrest. An arrest alone, therefore, cannot be both the event invoking the protections as well as the event nullifying them. The State also contends that there was "not enough time, realistically, to obtain a warrant." According to the State, that fact and the likelihood that the defendant would continue to conceal or otherwise dispose of the evidence creates an exigency justifying a warrantless search under section 1b. This contention is without merit because if accepted, it would effectively nullify the statutory protection afforded to persons detained or arrested for non-criminal offenses.
Section 1c permits a strip search of a person "lawfully confined in a municipal detention facility" based on reasonable suspicion, provided the search is authorized under regulations promulgated by the Commissioner of the Department of Corrections. The applicable regulation requires authorization of a strip search by the officer in charge. N.J.A.C. 10A:34-2.16(a)2i.
In the present case, the search was authorized by Sergeant Abrams, the officer in charge, and the police had reasonable suspicion that defendant was concealing drugs. The troublesome question is whether defendant was "lawfully confined in a municipal detention facility" within the meaning of the strip search statute.
All arrests involve some degree of detention. As previously indicated, the statute's protections apply to an arrestee and, therefore, the detention necessary to process an arrestee cannot constitute confinement within the meaning of subsection 1c, and would not justify a strip search.
In the present case, bail had been established at $1,000 when the arrest warrant issued. Defendant had more than enough cash to satisfy the bail. Once bail was *382 posted, defendant would have had the right to leave. The police decided to detain defendant to search for any additional outstanding warrants. The issue, therefore, is whether that detention, which Knights testified would be for approximately two hours, constituted lawful confinement within the meaning of subsection 1c.
We are not applying constitutional protections. We are construing a statute. However, we do so against the background of applicable constitutional principles.
The constitutionality of custodial strip searches was addressed by the United States Supreme Court in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In Wolfish, pretrial detainees at a federal detention facility were required to expose their body cavities, including vaginal and rectal, for visual inspection following a contact visit from any individual not affiliated with the prison. Id. at 558, 99 S.Ct. at 1884, 60 L.Ed.2d at 480-81. The Court acknowledged that this policy was adopted because of the considerable amount of money, drug and weapon smuggling occurring in the prison. Id. at 559, 99 S.Ct. at 1884, 60 L.Ed.2d at 481.
The Court considered the constitutionality of the body cavity search under the Fourth Amendment prohibition against unreasonable searches. Id. at 558, 99 S.Ct. at 1884, 60 L.Ed.2d at 481. As a preliminary matter, the Court observed that the test of reasonableness under the Fourth Amendment is not readily definable, and requires balancing the need for a particular search against the invasion of personal rights as a consequence of the search. Id. at 559, 99 S.Ct. at 1884, 60 L.Ed.2d at 481.
The Court concluded that custodial strip searches were constitutional so long as they were conducted in a reasonable manner; further, it announced that, upon "balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates," the searches were valid even when conducted on less than probable cause. Id. at 560, 99 S.Ct. at 1885, 60 L.Ed.2d at 482.
The majority of circuits of the U.S. Court of Appeals have had occasion to apply Wolfish, supra. Out of these decisions has emerged the test of "reasonable suspicion" to justify a strip search of certain inmates and detainees. For example, in Giles v. Ackerman, 746 F.2d 614, 617 (9th Cir.1984), cert. denied, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985), the court held that:
arrestees charged with minor offenses may be subject to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband. Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record.

[Citations omitted.]
Accord Weber v. Dell, 804 F.2d 796 (2nd Cir.1986), cert. denied sub nom. County of Monroe v. Weber, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); Jones v. Edwards, 770 F.2d 739 (8th Cir.1985); Stewart v. Lubbock County, Texas, 767 F.2d 153 (5th Cir.1985), cert. denied, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); Hill v. Bogans, 735 F.2d 391 (10th Cir.1984); Mary Beth G. v. City of Chicago, 723 F.2d 1263 (7th Cir.1983); Logan v. Shealy, 660 F.2d 1007 (4th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).
In New Jersey, the United States District Court has also uniformly applied the reasonable suspicion standard. See Ernst v. Borough of Fort Lee, 739 F.Supp. 220 (D.N.J.1990) (invalidating strip search policy for detainees unable to post bail); Wilkes v. Borough of Clayton, 696 F.Supp. 144 (D.N.J.1988) (invalidating policy of bathroom observation of all persons in police custody); O'Brien v. Borough of Woodbury Heights, 679 F.Supp. 429 (D.N.J.1988) (invalidating strip search policy for arrestees on petty disorderly offenses); *383 Davis v. City of Camden, 657 F.Supp. 396 (D.N.J.1987) (invalidating strip search policy for all detainees unable to post bail).
New Jersey's strip search statute was enacted in 1985, presumably in response to a decision invalidating a police department's policy of strip searching all detainees. State v. Sheppard, 196 N.J.Super. 448, 483 A.2d 235 (Law Div.1984). As originally enacted, L. 1985, c. 70, New Jersey's strip search statute did not "prohibit a strip search or body cavity search of a person unable to post bail after a reasonable opportunity to do so, who is lodged by court order or pursuant to an arrest authorized by law, in a lockup, detention facility, prison, jail or penal institution." L. 1985, c. 70, § 8. Reasonable suspicion was not a prerequisite under this statute.
After the statute was held to be unconstitutional, see Ernst, supra, the Legislature amended the statute to its present form. L. 1991, c. 305. As indicated, it now requires reasonable suspicion, authorization by a superior officer and lawful confinement. We are persuaded that the current statute was adopted to provide greater protection than is afforded by the Fourth Amendment. We draw this inference, in part, because a statute providing rights coextensive with constitutional protections would be superfluous.
Against this background we address the statute's phrase "lawfully confined in a municipal detention facility." In the present case, defendant was detained to permit the police sufficient time to perform a warrant search. Thus, the detention was investigative. Regarding lawful investigative stops, the United States Supreme Court has refused to set any bright-line time limits, determining instead that whether a stop was too long depends on the facts of each case. United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 615 (1985). In Sharpe, the Court stated that the issue turned on whether the police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Id.
State v. Dickey, 152 N.J. 468, 706 A.2d 180 (1998), involved the detention of a driver and occupant of a motor vehicle pending ascertainment of the owner of the vehicle, where responses of the driver and occupant evoked legitimate police suspicion regarding the contents of the trunk. The New Jersey Supreme Court held that a two-and-one-half- to three-and-one-half-hour detention between the initial stop and the establishment of probable cause was unconstitutional. The Court observed, "This is not to say that a stop over two hours can never be permissible, but any detention of that duration must be justified by the circumstances." Id. at 482, 706 A.2d 180.
Other jurisdictions have addressed the issue of detention while police conduct a check for outstanding arrest warrants. In State v. Williams, 50 Wash.App. 696, 750 P.2d 278, 280 (1988), the Court of Appeals of Washington observed that checks for outstanding arrest warrants during valid criminal investigatory stops have been recognized as a reasonable routine police procedure. In Williams, a warrant check was conducted during the time the police were lawfully questioning defendant about a motor vehicle accident; the procedure took between two and three minutes. Id.
In finding this detention reasonable and the confession which flowed from it lawfully obtained, the court held, "So long as the duration of the warrant check does not unreasonably extend the initially valid contact, we believe that the purpose behind warrant checks supports their use." Id. In so holding, however, the court noted that it was not deciding the issue of the validity of warrant checks outside the traffic stop context. Id. at n. 1.
Other courts have validated arrest-warrant checks during police detention. See, e.g., State v. Lopez, 873 P.2d 1127, 1133 *384 (Utah 1994) ("running a warrants check during the course of a routine traffic stop does not violate the Fourth Amendment, so long as it does not significantly extend the period of detention beyond that reasonably necessary to request a driver's license and valid registration and to issue a citation"); State v. Smith, 73 Or.App. 287, 698 P.2d 973, 976 (1985) (holding that while a three- to five-minute long check for outstanding arrest warrants based on reasonable suspicion during an otherwise lawful traffic stop was appropriate, a warrant check may become unreasonable if it takes an inordinately long time to complete).
We need not determine, in the present case, whether the proposed two-hour detention of defendant would have passed constitutional muster. As indicated, we are construing the strip-search statute. We conclude that an investigative detention to permit the police to search for outstanding arrest warrants, regardless of the amount of time it takes, does not render a suspect "lawfully confined" within the meaning of section 1c of the statute. To hold otherwise would permit the police to nullify the statute's protections by detaining a person for a warrant check or other investigative procedures after an arrest, and using such detention to provide the basis for a strip search under section 1c. In the present case, defendant's detention did not qualify as "confinement" when the strip search occurred.
We also note that defendant was subjected to more than a "strip search." The statute distinguishes between a "strip search" and a "body cavity search." N.J.S.A. 2A:161A-3 defines those terms:
a. For purposes of this act, a "strip search" means the removal or rearrangement of clothing for the purpose of visual inspection of the person's undergarments, buttocks, anus, genitals or breasts. The term does not include any removal or rearrangement of clothing reasonably required to render medical treatment or assistance or the removal of articles of outer-clothing such as coats, ties, belts or shoelaces.
b. For purposes of this act, a "body cavity search" means visual inspection or manual search of a person's anal or vaginal cavity.
N.J.S.A. 2A:161A-2 limits body cavity searches to persons "lawfully confined in an adult county correctional facility " (emphasis added) unless there is a warrant or consent. Thus, unlike a strip search, a body cavity search may not be performed based on confinement "in a municipal detention facility." Section 1c.
In the present case, Detective Knights visually inspected defendant's anal cavity after ordering defendant to bend over and "spread your cheeks." Thus, Knights performed a body cavity search in violation of the statute. Additionally, the statute mandates that body cavity searches "shall be conducted by a licensed physician or registered professional nurse." N.J.S.A. 2A:161A-5a.[1]
In summary, we conclude that the statute prohibited a strip search of defendant because there were no recognized exceptions to the warrant requirement, section 1b, and defendant was not "confined in a municipal detention facility." Section 1c. We also conclude that defendant was subjected to an unlawful "body cavity search" because he was not "confined in an adult county correctional facility." Section 2b.
The State also relies on the doctrine of inevitable discovery. See State v. Johnson, 120 N.J. 263, 289-90, 576 A.2d 834 (1990); State v. Sugar, 100 N.J. 214, 238, 495 A.2d 90 (1985). At the suppression hearing the motion judge recalled and confirmed that he had issued a warrant for defendant's arrest on September 18, 1996 in connection with an outstanding indictment. Thus, the warrant was issued six days before defendant's arrest on the *385 motor vehicle warrant. The motion judge ruled that the police would have found the new warrant and defendant would have been lodged in the county correctional facility where he would have been thoroughly searched and the contraband would have been found.
We conclude that this contention is without merit. There is no evidence in the record that the September 18, 1996 warrant would have been found four business days after it issued. More importantly, we are construing a statute and applying legislative intent. The statute prohibits strip and body cavity searches unless certain conditions exist. The statute is prophylactic, designed to protect citizens from an intrusive and degrading invasion of privacy. We are persuaded that the Legislature intended that all elements justifying this invasion be in place before the search occurs.
The order denying the motion to suppress evidence is reversed and the judgment of conviction is vacated. The case is remanded for further proceedings.
NOTES
[1] N.J.S.A. 2A:161A-10 provides that a violation of section 5 "shall not affect the admissibility of evidence seized pursuant to a strip search or body cavity search."