NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5608-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

GARY D. SMITH, JR.,

 Defendant-Appellant.
_________________________

 Argued March 22, 2017 – Decided July 27, 2017

 Before Judges Simonelli, Carroll and Gooden
 Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Morris County,
 Indictment No. 13-06-0794.

 Tamar Y. Lerer, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender, attorney;
 Ms. Lerer, of counsel and on the briefs).

 Paula Jordao, Assistant Prosecutor, argued the
 cause for respondent (Fredric M. Knapp, Morris
 County Prosecutor, attorney; Ms. Jordao, on
 the brief).
PER CURIAM

 Following the denial of his motions to suppress evidence

obtained from a warrantless strip search and blood draw, defendant

Gary D. Smith, Jr. pled guilty under Morris County Indictment No.

13-06-0794 to third-degree possession with intent to distribute a

controlled dangerous substance (CDS), N.J.S.A. 2C:35-5(b)(3).

Defendant also pled guilty under Summons No. 1422-M-093858 to

driving while intoxicated (DWI), N.J.S.A. 39:4-50, based on a 0.22

percent blood alcohol content revealed by the blood draw.1

 The trial court sentenced defendant in accordance with the

plea agreement to a seven-year term of imprisonment with a thirty-

nine-month period of parole ineligibility on the CDS conviction.2

Because this was defendant's first DWI conviction, the court

imposed a seven-month driver's license suspension, concurrent to

a two-year suspension for the CDS conviction, and twelve hours in

the Intoxicated Driver's Resource Center program. The court also

1
 Defendant also pled guilty under Morris County Indictment No.
13-01-0011 to third-degree possession of a CDS, N.J.S.A. 2C:35-
10(a)(1), and under Morris County Indictment No. 13-06-0669 to
third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). The
trial court sentenced him in accordance with the plea agreement
to a concurrent four-year term of imprisonment. Defendant also
pled guilty under Summons No. 1422-M-093858 to driving while
suspended, N.J.S.A. 39:3-40, and was sentenced as a fourth-time
offender. He does not appeal from these convictions.
2
 Defendant was eligible for an extended-term sentence pursuant
to N.J.S.A. 2C:43-6(f) based on his prior CDS convictions.

 2 A-5608-14T2
ordered defendant to install an interlock ignition device during

the suspension term and for one year after restoration of his

license, and imposed the appropriate fines, costs, and penalties.

 On appeal, defendant raises the following contentions:

 POINT I

 BECAUSE THE REQUIREMENTS OF THE STATUTE
 GOVERNING STRIP SEARCHES, N.J.S.A. 2A:161A-1,
 WERE NOT MET, THE STRIP SEARCH WAS ILLEGAL AND
 THE PHYSICAL EVIDENCE FOUND MUST BE
 SUPPRESSED.

 A. The Strip Search Was Not Authorized
 Under N.J.S.A. 2A:161A-1(b) Because
 There Was No Recognized Exception To The
 Warrant Requirement That Justified The
 Officers' Failure To Procure A Warrant.

 B. The Strip Search Was Not Authorized Under
 N.J.S.A. 2A:161A-1(c) Because Defendant
 Was Not Lawfully Confined In A Detention
 Facility At The Time The Search Took
 Place.
 POINT II

 RESULTS OF TESTS THAT WERE CONDUCTED ON
 DEFENDANT'S BLOOD, WHICH WAS DRAWN WITHOUT A
 WARRANT, MUST BE SUPPRESSED.

We affirm the denial of defendant's motion to suppress evidence

obtained from the strip search, but reverse the denial of his

motion to suppress evidence obtained from the blood draw, and

remand for a new suppression hearing on that issue.

 3 A-5608-14T2
 The Strip Search

 On September 29, 2012, Police Officer Timothy Thiel and

Detective Ron Camacho of the Town of Dover Police Department (DPD)

were in plain clothes monitoring local bars in the downtown area,

known for drug dealing. While conducting surveillance near a bar,

they saw defendant, Antoine Latta, and Gus Pallas talking in an

alleyway next to a bar. Thiel knew defendant and that defendant

and Latta had a history of dealing drugs. Thiel also knew that

Pallas was a known drug user. While observing the three men,

Thiel and Camacho saw Pallas hand something to defendant. Based

on their prior dealings with defendant and Latta, the officers

believed that defendant and Pallas were engaged in a drug

transaction. When Latta saw the officers, he motioned to defendant

and Pallas. The three men then split up with defendant and Latta

walking together in one direction and Pallas in another direction.

 Thiel and Camacho stopped and questioned Pallas, who told

them he was looking to purchase marijuana. A consent search did

not reveal any drugs on his person. Thiel and Camacho then found

defendant and told him to stop based on their suspicion he was

involved in a possible drug transaction and knowledge of a warrant

for his arrest for unpaid child support, which the Morris County

Sheriff's Department had issued approximately three weeks to one

month earlier.

 4 A-5608-14T2
 Defendant responded to Thiel and Camacho with profanity and

clenched both of his fists around his chest area. Defendant was

antagonistic, disruptive, aggressive, and loud, and ignored

Thiel's command to stop this behavior. Thiel ordered defendant

to place his hands on the unmarked patrol car, but defendant kept

turning in an aggressive manner, continued his disruptive behavior

and profanity, and refused to give Thiel his date of birth. Due

to defendant's uncooperative and aggressive behavior, Thiel called

for backup assistance.

 After backup arrived, defendant was placed under arrest for

disorderly conduct and obstruction. He was administered his

Miranda3 warnings, after which he said to Thiel, "You're lucky I

didn't smoke you like last time," because defendant had run from

Thiel before. Thiel conducted a pat-down search of defendant and

found over $800 in mostly $20 bills folded in a wad, which Thiel

believed, based on his training and experience, were the proceeds

from the sale of drugs. Thiel also found a cellphone that was

ringing nonstop from different numbers and contacts, which he

believed was indicative of someone engaged in drug transactions.

 Defendant was transported to police headquarters and placed

in the processing room. Because defendant was swearing, talking

3
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 5 A-5608-14T2
loudly, and being disruptive and antagonistic, Camacho and Thiel's

supervisor, Sergeant Gonzalez, stood in the doorway while Thiel

questioned defendant. Generally, persons charged with disorderly

persons offenses by the DPD are processed, issued a summons, and

released without bail. However, because of defendant's past

history of dealing drugs, aggressive, uncooperative, disruptive,

and antagonistic behavior, and the possibility of an active arrest

warrant, Gonzalez decided defendant should be placed in a holding

cell.

 DPD policy required a more thorough search before placing an

individual in a holding cell. While still in the processing room,

and in the presence of Gonzalez and Camacho, Thiel had defendant

remove his shoes and stand up. Thiel then removed defendant's

handcuffs and ordered him to turn around, put his hands on the

wall, and spread his legs. Defendant immediately became upset

when Thiel asked if there was anything he should not have on his

person. Without being asked to do so, defendant took off his

socks and shirt, dropped his sweat pants, pulled down his

basketball shorts, and stood in his boxers. Thiel told defendant

to pull up his basketball shorts.

 Thiel began a pat-down search after defendant pulled up his

basketball shorts. While conducting the pat-down, Thiel noticed

that defendant's buttocks were extremely clenched and told him to

 6 A-5608-14T2
spread his legs, but defendant kept his buttocks clenched. Thiel

had conducted hundreds of pat-down searches and never before felt

buttocks that tight. He believed that "something wasn't right

with that" and defendant was intentionally tightening his buttocks

to hold in something. Thiel put his open hand on the outside of

defendant's basketball shorts and felt an abnormal bulge with

small circular packages inside sticking out between defendant's

buttocks, which Thiel suspected contained CDS. Defendant struck

Thiel's hand and turned around.

 Thiel advised Gonzalez that he felt suspected CDS between

defendant's buttocks. Thiel then asked Camacho to pat-down

defendant's buttocks area to confirm what he suspected. As Camacho

attempted to do so, defendant lifted his leg in an attempt to kick

Camacho and struck Camacho's hand. Defendant ignored repeated

requests to remove the item himself, and remained uncooperative.

A struggle ensued and that continued into the hallway, with

defendant resisting the officers' efforts to handcuff him to

prevent him from assaulting another officer.

 Gonzalez, Camacho, and another police officer took defendant

to the ground and handcuffed him. The decision was then made to

conduct a strip search based on a reasonable suspicion that

defendant had contraband between his buttocks. Pursuant to DPD

policy, Thiel conducted the strip search in a room out of camera

 7 A-5608-14T2
view. While in that room, defendant was kicking and combative as

two officers held him on the ground. Thiel pulled down defendant's

basketball shorts and boxers half way, exposed defendant's

buttocks, saw a plastic bag between defendant's buttocks, grabbed

the tip of the bag, and pulled it out. The bag contained thirty-

eight small plastic $20 bags of powder cocaine. Defendant remained

uncooperative and resistant, and was placed in the holding cell,

where he swore at the officers and challenged Camacho to a fight.

Defendant was subsequently transported to the hospital after

complaining of breathing problems, accompanied by Camacho. On the

way, defendant remained aggressive and uncooperative. Sometime

after the strip search, Thiel confirmed that defendant's arrest

warrant for outstanding child support was active. Except for the

actual strip search, a video camera captured defendant's

interaction with the police in the processing room and hallway.

 Defendant was charged with several drug-related offenses as

well as third-degree aggravated assault on a police officer,

N.J.S.A. 2C:12-1(b)(5)(a); third-degree resisting arrest, N.J.S.A.

2C:29-2(a)(3); and fourth-degree obstruction, N.J.S.A. 2C:29-1(a).

He filed a motion to suppress the evidence obtained from the

warrantless strip search.

 8 A-5608-14T2
 In denying the motion, the motion judge reviewed the video

and determined that the strip search was justified under N.J.S.A.

2A:161A-1(b) or (c), which provide as follows:

 A person who has been detained or
 arrested for commission of an offense other
 than a crime shall not be subjected to a strip
 search unless:

 . . . .

 b. The search is based on probable
 cause that a weapon, controlled dangerous
 substance, as defined by the "Comprehensive
 Drug Reform Act of 1987," [N.J.S.A. 2C:35-1
 to -31], or evidence of a crime will be found
 and a recognized exception to the warrant
 requirement exists; or

 c. The person is lawfully confined in
 a municipal detention facility or an adult
 county correctional facility and the search
 is based on a reasonable suspicion that a
 weapon, controlled dangerous substance, as
 defined by the "Comprehensive Drug Reform Act
 of 1987," [N.J.S.A. 2C:35-1 to -31], or
 contraband, as defined by the Department of
 Corrections, will be found, and the search is
 authorized pursuant to regulations
 promulgated by the Commissioner of the
 Department of Corrections.

The judge reasoned there was probable cause to believe defendant

had a CDS on his person and defendant's actions in resisting the

pat-down search at police headquarters created exigent

circumstances justifying the warrantless strip search. The judge

determined that under the circumstances where defendant strongly

resisted such that it took three officers to restrain him, it was

 9 A-5608-14T2
not reasonable to expect the officers to hold defendant down and

call for a search warrant.

 Alternatively, the judge found the warrantless strip search

was justified under N.J.S.A. 2A:161A-1(c), and authorized by

N.J.A.C. 10A:34-3.5 (a). Lastly, the judge distinguished State

v. Harris, 384 N.J. Super. 29 (App. Div.), certif. denied, 188

N.J. 357 (2006), on which defendant relied. The judge found that

unlike in Harris, there was probable cause to believe defendant

had a CDS on his person; defendant failed to cooperate at

headquarters and was subject to placement in a holding cell;

defendant had to be searched before being placed in a holding

cell; defendant had an outstanding arrest warrant and was subject

to a custodial detention until brought before a judge; and the

search was conducted above defendant's clothing and gave strong

probable cause to believe that he had CDS secreted on his person.

The judge reiterated that defendant's own actions in resisting the

pat-down search at police headquarters created exigent

circumstances that created an exception to the warrant

requirement.

 On appeal, defendant does not dispute that the police had

probable cause to believe a CDS would be found on him. Rather,

he contends that the strip search was not justified under N.J.S.A.

2A:161A-1(b) because there was no recognized exception to the

 10 A-5608-14T2
warrant requirement. Relying on State v. Hayes, 327 N.J. Super.

373 (App. Div. 2000), he argues that the exigency inherent in his

arrest cannot satisfy the statutory requirement under N.J.S.A.

2A:161A-1(b).4 Relying on both Hayes and State v. Evans, 449 N.J.

Super. 66 (App. Div.), certif. granted, ___ N.J. ___ (2017), he

argues that the search-incident-to-arrest exception to the warrant

requirement cannot be used to justify a strip search under the

statute.5 Again relying on Hayes, supra, 327 N.J. Super. at 382-

83, defendant contends that the strip search was not justified

under N.J.S.A. 2A:161A-1(c).

 Our Supreme Court has established the standard of review

applicable to consideration of a trial judge's ruling on a motion

to suppress:

 We are bound to uphold a trial court's factual
 findings in a motion to suppress provided
 those findings are supported by sufficient
 credible evidence in the record. Deference
 to those findings is particularly appropriate
 when the trial court has the opportunity to
 hear and see the witnesses and to have the

4
 Defendant also relies on State v. Jean, No. A-2100-12 (App.
Div. May 6, 2015) in support of this argument. However, that
opinion does not constitute precedent or bind us. R. 1:36-3;
Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001).
5
 In Evans, we held that the record did not support an application
of the plain feel exception to the warrant requirement to justify
the strip search of the defendant under N.J.S.A. 2A:161A-1(b).
Evans, supra, 449 N.J. Super. at 84-85. Here, the State did not
argue before the trial court or on appeal that the plain feel
exception applied.

 11 A-5608-14T2
 feel of the case, which a reviewing court
 cannot enjoy. Nevertheless, we are not
 required to accept findings that are clearly
 mistaken based on our independent review of
 the record. Moreover, we need not defer to a
 trial . . . court's interpretation of the law
 because [l]egal issues are reviewed de novo.

 [State v. Watts, 223 N.J. 503, 516 (2015)
 (alteration in original) (citations
 omitted).]

We owe deference to a trial court's factfindings based on video

or documentary evidence. State v. S.S., ___ N.J. ___, ___ (2017)

(slip op. at 32-33).

 Applying these standards, we discern no reason to reverse the

denial of defendant's motion to suppress evidence obtained during

the warrantless strip search. "In the absence of a warrant or

consent, [N.J.S.A. 2A:161A-1(b)] prohibits a strip search of a

person who has been 'detained or arrested for commission of an

offense other than a crime' unless the search is based on probable

cause and 'a recognized exception to the warrant requirement.'"

Evans, supra, 449 N.J. Super. at 72 (quoting N.J.S.A. 2A:161A-

1(b)). Since it is undisputed that Thiel had probable cause to

believe that a CDS would be found on defendant, the question is

"whether a recognized exception to the warrant requirement applied

and whether it was objectively reasonable to conduct a strip search

under the circumstances here." Id. at 81.

 12 A-5608-14T2
 The record, notably the video, supports the judge's

conclusion that there were exigent circumstances to conduct the

warrantless strip search. We agree with the judge that defendant's

actions in resisting the pat-down search at police headquarters

created exigent circumstances justifying the warrantless strip

search, and under the circumstances where defendant strongly

resisted and it took three officers to restrain him, it was not

reasonable to expect the officers to hold him down and call for a

search warrant. Accordingly, the warrantless strip search was

justified under N.J.S.A. 2A:161A-1(b). Having reached this

conclusion, we need not address defendant's contention that the

strip search was not justified under N.J.S.A. 2A:161A-1(c).

 The Blood Draw

 At approximately 3:08 a.m. on May 12, 2012, Police Officer

Jason Lawlor of the Morris Township Police Department was

dispatched to the scene of a motor vehicle accident on Sussex

Avenue. Upon arriving, Lawlor saw a car facing in an easterly

direction on the westbound side of the roadway that had run off

the road and struck a tree. Lawlor approached the passenger's

side and saw the air bag was deployed, defendant was alone sitting

in the driver's seat using his cell phone, and there was a

"starring or a webbing" on the windshield on the driver's side.

When defendant lowered the passenger's side window and began

 13 A-5608-14T2
speaking, Lawlor detected an odor of alcohol coming from the car's

interior. Lawlor also saw a knife on the front passenger seat and

an open beer bottle on the front passenger floorboard. Lawlor

walked to the driver's side door and opened it. Between the

driver's seat and the running board, Lawlor saw a plastic bag that

contained smaller plastic bags with a white powdery substance,

which he suspected was cocaine.

 Defendant initially told Lawlor he was not injured, but then

said that someone had hit him on the head and placed him in the

car. When defendant attempted to exit the car, Lawlor saw that

his right ankle was very swollen and bleeding and he had

lacerations on his forehead. The officer also detected the odor

of alcohol emanating from defendant's breath. Lawlor did not

administer any field sobriety tests due to defendant's injuries,

or place defendant under arrest.

 Police Officer Bryan Markt arrived at the scene and saw Lawlor

at the driver's side of defendant's car. Markt went to the

passenger's side and saw that defendant was lethargic, his

movements were slow, his eyes were barely open, and he was

basically "completely out of it." Markt detected the odor of an

alcoholic beverage coming from the car and believed that defendant

was intoxicated. Markt also saw the knife and beer bottle inside

 14 A-5608-14T2
the car, and Lawlor showed him the plastic bag containing the

white powdery substance.

 Emergency personnel removed defendant from the car, placed

him on a backboard, and transported him to the hospital,

accompanied by Markt. Defendant was screaming during the

transport. Markt saw that defendant's right foot was facing the

opposite direction and believed the injury was severe. Markt

believed defendant was in custody at the hospital, but he never

advised defendant he was under arrest and never gave defendant

Miranda warnings.

 At the hospital, Markt personally witnessed hospital staff

draw blood from defendant and complete the necessary paperwork.

He then took two vials of defendant's blood to headquarters and

secured them in a refrigerator.

 Markt did not ask defendant for his consent to the blood draw

or attempt to obtain a search warrant. He testified at the

suppression hearing that the procedure he followed for defendant's

blood draw was consistent with the procedure in effect on May 12,

2012, and he was aware of a procedure for obtaining a telephonic

warrant in May 2012, but had no authority to apply for one. He

also testified that he knew the procedure he used in May 2012 was

no longer the proper procedure, and that the new procedure required

a search warrant.

 15 A-5608-14T2
 The motion judge addressed whether there were exigent

circumstances justifying the warrantless blood draw, or whether

the exclusionary rule applied to suppress the blood sample. Citing

Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed.

2d 908 (1966), and State v. Ravotto, 169 N.J. 227 (2001), the

judge noted that the police are permitted to obtain a warrantless

blood sample from a driver if there was probable cause to believe

the driver was intoxicated and on the presumption that the

dissipation of alcohol in a suspect's blood stream created exigent

circumstances. The Ravotto Court noted that "consistent with

Schmerber and our analogous case law, the dissipating nature of

the alcohol content in the defendant's blood presented an exigency

that required prompt action by the police." Ravotto, supra, 169

N.J. at 250.

 The judge acknowledged that Missouri v. McNeely, ___ U.S.

___, 133 S. Ct. 1552, 186 L. Ed. 2d 696 (2013) changed the law for

blood draws by holding there was no per se rule of exigency in DWI

cases based on the dissipation of alcohol, and that the need to

obtain a search warrant must be determined on a case-by-case basis

using the totality of the circumstances analysis. However, citing

State v. Adkins (Adkins I), 433 N.J. Super. 479, 484 (App. Div.

2013), the judge declined to apply McNeely retroactively. The

judge found there was probable cause to believe defendant was

 16 A-5608-14T2
intoxicated, but "there are not sufficient facts to establish if

there were exigent circumstances justifying a warrantless blood

sample." The judge declined to apply the exclusionary rule,

finding defendant's blood sample was taken in accordance with the

legal precedent for obtaining warrantless blood samples prior to

McNeely. The judge entered an order on March 17, 2014, denying

the motion.

 After the judge's decision, on May 4, 2015, our Supreme Court

reversed Adkins I and gave the McNeely totality of the

circumstances analysis pipeline retroactivity to all blood draws

from suspected drunk drivers. State v. Adkins, 221 N.J. 300, 317

(2015). The Court further held as follows:

 [L]aw enforcement should be permitted on
 remand in these pipeline cases to present to
 the court their basis for believing that
 exigency was present in the facts surrounding
 the evidence's potential dissipation and
 police response under the circumstances to the
 events involved in the arrest. Further, the
 exigency in these circumstances should be
 assessed in a manner that permits the court
 to ascribe substantial weight to the perceived
 dissipation that an officer reasonably faced.
 Reasonableness of officers must be assessed
 in light of the existence of the McNeely
 opinion. But, in reexamining pipeline cases
 when police may have believed that they did
 not have to evaluate whether a warrant could
 be obtained, based on prior guidance from our
 Court that did not dwell on such an
 obligation, we direct reviewing courts to
 focus on the objective exigency of the

 17 A-5608-14T2
 circumstances that the officer faced in the
 situation.

 [Ibid.]

 Because McNeely has retroactive application here, we are

compelled to reverse the denial of defendant's motion to suppress

the blood draw, and remand for a new hearing to further develop

the record to determine whether, under the totality of the

circumstances, there was sufficient exigency to justify the

warrantless blood draw. Id. at 312, 314.

 Affirmed in part, reversed in part and remanded for further

proceedings consistent with this opinion. We do not retain

jurisdiction.

 18 A-5608-14T2