**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1442-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EMAN HASSENBEY, a/k/a
EMOND HASSENBAY, AMAN A. HASSENBEY,
and EMAN A. HASSENBEY,

    Defendant-Appellant.

_____

          Submitted March 7, 2018 — Decided  June 29, 2018

          Before Judges Alvarez and Geiger.

          On appeal from Superior Court of New Jersey,
          Law Division, Union County, Indictment Nos.
          15-03-0237 and 15-06-0448.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (Brian P. Keenan, Assistant
          Deputy Public Defender, of counsel and on the
          brief).

          Gurbir S. Grewal, Attorney General, attorney
          for respondent (Arielle E. Katz and Steven A.
          Yomtov, Deputy Attorneys General, of counsel
          and on the brief).

PER CURIAM

After a judge denied his motion to suppress evidence seized during a warrantless search (Indictment No. 15-03-0237), and his pretrial motions, including an application for a <u>Franks</u>[1] hearing, on a second set of charges (Indictment No. 15-06-0448), defendant Eman Hassenbey entered into a plea agreement with the State. In exchange for his guilty pleas to one count of the first indictment, third-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-10(a)(1), and second-degree CDS possession with intent to distribute more than half an ounce, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2) on the second indictment, defendant was sentenced to concurrent terms of imprisonment on November 2, 2016. On the earlier indictment, the judge imposed five years imprisonment, subject to two and one-half years of parole ineligibility. On the later indictment, he received twelve years state prison, subject to six years of parole ineligibility. He now appeals the denial of his motion and his sentence, and we affirm.

Plainfield Police Sergeant Jerry Plum testified during the suppression hearing that at approximately 1:30 a.m. he was on patrol with a partner. A confidential informant had told him a few minutes earlier that a man named Eman was delivering narcotics

---

[1] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

"stashed in his crotch area" to that location. The informant also said defendant was driving a gold-colored Infiniti and was seated in his car in the back of the lot. The informant saw defendant pull into the parking lot, although Plum did not explain how the informant learned that defendant stored the drugs in his crotch area.

The confidential informant had been useful in many prior narcotics investigations and was currently working with other detectives. Plum had previously arrested defendant on drugs and weapons charges and was familiar with the car he drove.

When Plum and his partner drove through the lot, they saw defendant's vehicle towards the back. Plum stopped the patrol car at an angle in front of defendant's automobile about five feet away from his front bumper, so that defendant could not drive away. Once Plum approached, he could see defendant's face, illuminated by his cell phone. The car engine was running, and defendant was in the driver's seat.

Once defendant made eye contact with Plum, his phone went down, he sat up, and he made an outward gesture with his right hand. Although concerned that the movement might mean defendant had a weapon, Plum continued to approach the vehicle, and he engaged defendant in idle chitchat.

Plum knew defendant did not have his driver's license. As Plum spoke to defendant, who had rolled down his window, the officers illuminated the interior with their flashlights. Defendant admitted driving his car although he was unlicensed. The officers saw a scanner in the middle console of the car, which Plum testified were often used by drug dealers in order to monitor police activity. He also saw six or seven small rubber bands commonly used to package heroin on the floor of the vehicle.

When Plum's partner flashed his light at defendant's crotch area, Plum saw the pants zipper was open. When Plum asked defendant about that, defendant "completely changed [his] demeanor, became short of breath, he was like what, he was relatively speechless." Plum told him to "zip up [his] pants," and defendant took about thirty seconds because he was shaking and "convulsing."

Plum asked defendant to exit the vehicle so he could pat him down. Defendant was not free to leave as he "would have investigated further." In his opinion, defendant may have "technically" been under arrest because he was not free to leave. Plum believed the tip was corroborated by the rubber bands on the floor, the police scanner, defendant's movements and demeanor, and defendant's dubious claim to have just been waiting for a friend in the back of an empty parking lot. The officer opined that

4

defendant's nervous responses were "out of character." Plum added that defendant became so nervous when the open zipper was drawn to his attention that he literally could not close it.

As Plum conducted a pat-down, he felt a bulge below defendant's belt buckle and asked him about it. Defendant gestured that he did not know. Suspecting the bulge contained narcotics, as predicted by the informant, Plum pulled up defendant's shirt and ran his thumb around the inside of defendant's waistband. Defendant had a sock, attached to his underwear, hooked on his waistband.

Stating the obvious, that socks are not typically sewn to underwear, Plum pulled out a large quantity of narcotics. He removed the drugs, but not the sock. Defendant was immediately cuffed, and a large quantity of cash was found in his front pocket. The radio scanner was tuned to the police channel. The officers also retrieved the rubber bands, two cell phones, and a package of AA batteries for the scanner.

In a written opinion, the judge ruled that the officers reasonably relied on the confidential informant's tip and the details provided, which indicated personal observations. The officers approached defendant at night in a high-crime, high-narcotics area. The informant used defendant's first name and accurately described his car.

Additionally, Plum knew defendant had been previously convicted for drug offenses, and he was involved with guns and drugs. Once the officers looked into the vehicle and saw the rubber bands and scanner, as well as defendant's open pants zipper and his nervous reaction to the inquiry about it, the officer had a sufficient basis to perform a pat-down. During the pat-down, the officer felt the bulge exactly where the confidential informant said it would be located. Thus, the judge denied the motion to suppress.

As to the second indictment, Union County Detective Filipe Afonso received information that defendant was "actively involved in the distribution of [CDS], specifically, cocaine, within the City of Plainfield, which he store[d] in his residence[] . . . and from [his car]." That information was known to the authorities not only from a confidential informant's tip but from two controlled buys performed by the confidential informant. The substance purchased through the controlled buys tested positive for cocaine. Afonso's affidavit submitted in support of a search warrant set forth defendant's prior criminal history, information about his address and car, the tip, and the controlled buys. On the strength of that affidavit, a no-knock search warrant issued authorizing a search of defendant's car and home.

On December 16, 2014, the police stopped defendant's car and drove him to his apartment. On defendant's person, police found $173, numerous bags of suspected cocaine and heroin in a sock attached to his underwear, and two cell phones. The officers seized a scanner from defendant's car and rubber bands, sandwich bags, wire cutters, and $15,677 in cash from his apartment.

On December 11, 2015, defendant moved for a dismissal of the second indictment and a venue change. He also moved for disclosure of the identity of the confidential informant and information about the confidential informant and the controlled buys. In support of his motion for a <u>Franks</u> hearing, defendant alleged that the information regarding the controlled buy was not credible because the drug testing was too brief, thus raising doubt as to whether testing had occurred.

The court found sufficient probable cause for the issuance of the warrant, and denied all of defendant's related motions. The confidential informant had provided information leading to twelve arrests and the seizure of drugs, money, and motor vehicles. The informant's controlled buys from defendant were verified by the officers' observation when the purchases were made. The officers were also present when the informant called defendant to arrange the meetings. Officers saw defendant drive to the agreed-

upon location in his car. Therefore, the certification supporting the application of a search warranted sufficed.

The court found aggravating factors three, six, and nine, N.J.S.A. 2C:44-1(a)(3), (6), and (9), when sentencing defendant. The judge commented defendant's prior record was "very extensive," consisting of eight indictable and three disorderly persons offense convictions, including a second-degree CDS offense, certain persons offense, and a school zone CDS offense. Thus, the judge was "clearly convinced" that the aggravating factors "substantially outweigh" the non-existent mitigating factors.

On appeal, defendant raises the following points:

> POINT I
> EVIDENCE SEIZED AS THE RESULT OF THE OFFICERS' UNCONSTITUTIONAL INITIAL STOP AND SUBSEQUENT ARREST OF HASSENBEY MUST BE SUPPRESSED AS TO INDICTMENT NO. 15-03-237.

> POINT II
> THE OFFICERS' STRIP SEARCH OF HASSENBEY IN A PUBLIC PARKING, WAS ILLEGAL AND UNREASONABLE, AND THEREFORE, THE EVIDENCE SEIZED MUST BE SUPPRESSED AS TO INDICTMENT NO. 14-03-237 (NOT RAISED BELOW).

> POINT III
> AS TO INDICTMENT NO. 15-06-0448, THE MOTION JUDGE ERRED IN DENYING HASSENBEY'S REQUEST FOR A FRANKS HEARING, BASED ON AN ALLEGATION THE BUYS WERE FABRICATED AFTER DENYING HIS MOTION FOR DISCOVERY RELATED TO THOSE SUPPOSED CONTROLLED BUYS.

A-1442-16T4

POINT IV
THE JUDGE'S SENTENCING UTTERLY FAILED TO
COMPLY WITH THE REQUIREMENTS OF STATE V. CASE,
220 N.J. 49 (2013), RESULTING IN A MANIFESTLY
EXCESSIVE SENTENCE THAT MUST BE REVERSED.

I.

When reviewing motions to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (citing State v. Robinson, 200 N.J. 1, 15 (2009)). This is particularly true when the findings of the trial court are "substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case," even if we might have reached a different conclusion. State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "A trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Ibid. (quoting Johnson, 42 N.J. at 162).

We address defendant's first and second points together. He begins by contending that the investigatory stop was illegal because it was based on a confidential informant's unsubstantiated tip. He argues that Plum's visual confirmation of the information he received was so superficial as to be meaningless. Building on

that premise, defendant argues that the investigatory stop was illegal.

The Fourth Amendment of the United States Constitution and article one, paragraph seven of the New Jersey Constitution guarantee the right of people to be secure against unreasonable searches and seizures, by requiring warrants issued upon probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Warrantless searches "are presumptively unreasonable and invalid unless justified by a recognized exception to the warrant requirement." State v. Bolte, 115 N.J. 579, 585 (1989) (citations omitted).

One such exception is an investigatory stop. See State v. Patino, 83 N.J. 1, 7 (1980) ("The warrant requirement . . . may be dispensed with in only a few narrowly circumscribed exceptions. The prima facie invalidity of any warrantless search is overcome only if that search falls within one of the specific exceptions created by the United States Supreme Court."); see also Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Hensley, 469 U.S. 221, 226 (1985) (finding that police officers may stop a motor vehicle and detain its occupants temporarily while they investigate a criminal offense). To subject a person to an investigatory stop and detention, however, the police must have reasonable, articulable suspicion of conduct that violates the law.

In New Jersey, a police officer may conduct an investigatory stop if, based on the totality of the circumstances, there is reasonable suspicion to believe an individual has just engaged in, or about to engage in, criminal activity. State v. Maryland, 167 N.J. 471, 487 (2001) (citing Terry, 392 U.S. at 21). Our Supreme Court defines "reasonable suspicion" as "a particularized and objective basis for suspecting the person stopped of criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Under the totality of the circumstances analysis, weight is given to the officer's experience and knowledge, and the "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Todd, 355 N.J. Super. 132, 137-38 (App. Div. 2002) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

The Supreme Court has articulated specific guidelines for cases involving police informants. State v. Sullivan, 169 N.J. 204, 212 (2001). Such information may constitute a basis for a finding of even probable cause to search, so long as substantial grounds exist crediting the information. State v. Smith, 155 N.J. 83, 92 (1998). Whether probable cause is established "is determined by a standard that calls for consideration and analysis of all relevant circumstances." Ibid.; see also Illinois v. Gates, 462

U.S. 213, 238 (1983) (finding that the reliability of an informant's tip must be analyzed under the totality of circumstances); State v. Novembrino, 105 N.J. 95, 122 (1987) (adopting the totality of circumstances analysis from Gates).

"Two factors generally considered [as] highly relevant, if not essential," in the totality of circumstances analysis are the informant's "veracity" and the informant's "basis of knowledge." Smith, 155 N.J. at 93 (quoting Gates, 462 U.S. at 238). "A deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" State v. Zutic, 155 N.J. 103, 110-11 (1998) (citations omitted). Additionally, our courts have stressed that a factor, "though insufficient if considered in isolation, may in combination reinforce or augment another and become sufficient to demonstrate probable cause." Id. at 113 (citing Gates, 462 U.S. at 233).

Regarding an informant's veracity, past instances of reliability are "probative of veracity, although [their] weight in the ultimate determination of probable cause may vary with the circumstances of each case." Smith, 155 N.J. at 94. An informant's veracity may be shown by demonstrating that the informant proved to be reliable in previous police investigations. Novembrino, 105 N.J. at 123. However, since the totality of the

12

circumstances must be examined, "past instances of reliability do not conclusively establish an informant's reliability." Smith, 155 N.J. at 94.

In the absence of a disclosure that relates expressly the manner in which the informant acquired knowledge, "the nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source." Ibid. (citing Novembrino, 105 N.J. at 113). "By providing sufficient detail in the tip or recounting information that could not otherwise be attributed to circulating rumors or be easily gleaned by a casual observer, an informant can implicitly disclose a reliable basis of knowledge as the foundation of the information related to the police." Id. at 95.

Independent police "corroboration is necessary to ratify the informant's veracity and validate the truthfulness of the tip, and is considered an essential part of the determination of probable cause." State v. Jones, 179 N.J. 377, 390 (2004) (citation omitted). The degree of corroboration the police must present to the court depends on a qualitative analysis of "the unique facts and circumstances presented in each case." Ibid. Whether the police corroboration suffices to justify the police intrusion "turns ultimately on the totality of the circumstances." State

v. Rodriguez, 172 N.J. 117, 128 (2002) (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Defendant contends Plum's description of the informant's history with the police was "vague and conclusory," thus establishing the informant's lack of veracity. Even if the informant's history is sufficient, defendant argues, the informant's basis of knowledge was unknown. Since, according to defendant, the officers did not corroborate predicted or hard-to-know information before the search, the drugs should be suppressed. This argument lacks merit.

Where an informant has previously proven reliable, that satisfies the first factor. See Novembrino, 105 N.J. at 123. This informant's history consists of numerous occasions where the informant's information proved useful not only to Plum, but to other detectives in Plainfield. Thus, Plum's testimony readily satisfied the veracity prong.

Furthermore, the informant furnished information that could only have been obtained from personal observations. The informant advised that a man named "Eman" was dealing drugs out of his gold or tan Infiniti that was backed into a spot in the rear of a deserted parking lot for that purpose. The informant expressly indicated he had seen defendant conducting an illegal drug sale, thus also demonstrating the basis of knowledge.

14

The informant's tip in this case, in contrast to the cases defendant cites, contained details including defendant's name and specific location. Plum knew defendant and his drug history. Defendant's exaggerated reaction when Plum mentioned his open pants zipper itself validates the information given by the informant. The credible evidence in the record supports the trial judge's conclusion that the information was sufficiently corroborated, and therefore reliable. See Rockford, 213 N.J. at 440.

Defendant also contends that Plum lacked probable cause to arrest or search his person. The argument hinges, however, on the conclusion that the totality of the circumstances did not give Plum a basis for an investigatory stop. Not only did Plum have a basis for an investigatory stop, once defendant engaged in furtive movements and reacted in a highly suspicious fashion when asked about his open zipper, Plum was entitled to pat defendant down for his own safety.

An officer's protective frisk for weapons is lawful where, "a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." State v. Lund, 119 N.J. 35, 39 (1990) (quoting Terry, 392 U.S. at 27).

As the Law Division judge said:

As he approached the car, Sergeant Plum observed the defendant using his cellphone and moving something in the car with his right hand. Sergeant Plum believed the defendant did not have a driver's license. This was confirmed by the defendant. The Infinit[i]'s engine was running when the officers approached. In the car, Sergeant Plum saw a police radio scanner, commonly used by drug dealers, and drug packaging material. Sergeant Plum observed the defendant's zipper being down. When he asked the defendant about it, the defendant became extremely nervous and evasive. Based on the facts present[ed], there was sufficient basis for Sergeant Plum to ask the defendant to exit the car for his safety, and to perform a pat[-]down for weapons. In defendant's pants in the crotch area, Sergeant Plum felt a sock in the exact area the [informant] said the defendant was concealing CDS. Based on the [informant's] information, the officer's corroboration of the [informant's] information, and the officer's knowledge and observations, there was probable cause for the defendant's arrest and search incident to arrest.

In other words, once Plum corroborated the tip, there was a basis for an investigatory stop and pat-down. As the circumstances evolved, Plum had probable cause to search. The trial court's ruling denying defendant's motion to suppress evidence should be affirmed.

For the first time on appeal, defendant argues that the officer dragging his thumb along the inside of defendant's pants was the equivalent of a strip search. This argument also lacks merit.

A-1442-16T4

A strip search is "the removal or rearrangement of clothing for the purpose of visual inspection of the person's undergarments, buttocks, anus, genitals or breasts." N.J.S.A. 2A:161A-3(a). The strip search statute, N.J.S.A. 2A:161A-1, was adopted "to provide greater protection than is afforded by the Fourth Amendment [of the Federal Constitution]." State v. Hayes, 327 N.J. Super. 373, 381 (App. Div. 2000). Conducting a strip search in violation of this statute renders the search unreasonable and requires suppression of any evidence discovered. U.S. Const. amends. IV, XIV; N.J. Const. art. I, ¶ 7; see State v. Harris, 384 N.J. Super. 29, 49 (App. Div. 2006); Hayes, 327 N.J. Super. at 373; Harris, 384 N.J. Super. at 49.

Plum's search of defendant's upper pants area did not require removal or significant rearrangement of his clothing. He pulled up defendant's shirt and ran his thumb around the inside of defendant's waistband. Once he felt the drugs hidden in the sock hanging from the waistband, and removed the narcotics, he went no further. Although he did lift defendant's shirt, Plum's conduct was not for the purpose of visual inspection of defendant's undergarments or private parts.

Furthermore, Plum's seizure of the contents of the sock was proper pursuant to the "plain feel doctrine." Minnesota v. Dickerson, 508 U.S. 366 (1993); State v. Evans, 449 N.J. Super.

17

66, 82 (App. Div. 2017) (citations omitted). According to the doctrine, "police officers may seize nonthreatening contraband detected during a protective patdown search" as long as the search remained within its bounds. <u>Dickerson</u>, 508 U.S. at 373. The Court said:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
>
> [<u>Id.</u> at 375-76.]

As the <u>Dickerson</u> Court noted, the plain-view and plain-feel doctrines both require probable cause if the object of a warrantless seizure is contraband. <u>Id.</u> at 376.

Under the plain-feel doctrine, Plum had sufficient probable cause to immediately seize the drugs from defendant at the scene of incident. <u>See</u> <u>State v. Toth</u>, 321 N.J. Super. 609, 612-14 (App. Div. 1999) (finding that an officer's observation of a large bulge and feeling of suspected CDS in defendant's groin area during the course of a protective frisk gave rise to probable cause to seize the CDS). It was immediately apparent to Plum that the peculiar

waistband/sock arrangement concealed contraband, but Plum's conduct did not equate to a strip search.

## II.

We accord substantial deference to a trial court's decision to issue a search warrant. State v. Keyes, 184 N.J. 541 (2005). A search warrant is presumed valid, and defendant bears the burden to prove "there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." State v. Valencia, 93 N.J. 126, 133 (1983) (citation omitted). "Doubt as to the validity of the warrant should ordinarily be resolved by sustaining the search." Keyes, 184 N.J. at 554 (citation omitted).

Defendant suspects that the controlled buys were fabricated and the affidavit in support of the issuance of the search warrant therefore contained willful falsehoods, and argues he should have been granted a Franks hearing for that reason. He supports the argument by reasoning that if officers are not compelled to better document controlled buys, they could simply engage in fictional buys at will.

The primary purpose of a Franks hearing is to "determine whether the police made material misrepresentations and/or omissions in seeking [a search warrant] and, if so, whether the evidence gathered from [a] defective warrant[] [must] be

19

suppressed." State v. Smith, 212 N.J. 365, 413-14 (2012). The Fourth Amendment requires the court to hold a hearing at the defendant's request when a criminal defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56. These requirements also apply where the allegations are that the affidavit, though facially accurate, omits material facts. State v. Stelzner, 257 N.J. Super. 219, 235 (App. Div. 1992).

A defendant cannot rely on unintentional falsification, but "must allege 'deliberate falsehood or reckless disregard for the truth.'" State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171). "These allegations should be supported by an offer of proof including reliable statements by witnesses, and they must be proved by a preponderance of the evidence." Id. at 568-69 (citing Franks, 438 U.S. at 171). Finally, the misstatements claimed to be false must be material to the extent that when they were excised from the affidavit, that document no longer contained facts sufficient to establish probable cause. Ibid. (citing Franks, 438 U.S. at 171).

The sole factor defendant can point to in support of his contention that the affidavit contained a material misrepresentation is that the turnaround time between the buy and the testing of the drugs was too brief. That is not enough of a showing to justify discovery that would be nothing more than a fishing expedition. See State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009) (A defendant's broad discovery rights under Rule 3:13-3 does not entitle him to a launch a fishing expedition).

Defendant has failed to make the necessary substantial preliminary showing that Afonso's statements were intentionally false. See Howery, 80 N.J. at 567-69. Nothing but speculation fuel's defendant's claim that Afonso's affidavit contains material misrepresentation or a reckless disregard for the truth. Unfounded suspicion is not the equivalent of a substantial preliminary showing. See id. at 567.

On its face, Afonso's affidavit clearly supports probable cause for a search warrant. See Broom-Smith, 406 N.J. Super. at 240. We observed in that case:

> For purposes of the warrant application, it was sufficient that [the Investigator] had listened in to the phone conversation in which defendant told the informant to come over to his house, that the informant reported to her right after the controlled buy that defendant sold him a substance purported to be cocaine,

21

and that the investigators field-tested the purchased substance immediately. . . . Whether more extensive later testing conclusively proved the substance to be [CDS] . . . [is] irrelevant to the validity of the warrant.

[Ibid.]

The court's refusal to turn over lab reports and money requisition forms, attendant to a Franks hearing, was not error.

III.

We overturn a trial court's sentencing decision only where it constitutes a "patent and gross abuse of discretion." State v. Roth, 95 N.J. 334, 364 (1984) (quoting State v. Bender, 80 N.J. 84, 93 (1979)). A patent and gross abuse of discretion occurs when the decision either "(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Ibid. (citation omitted). A sentence justifies reversal only where it "shocks the judicial conscience." Ibid.

Defendant also argues that because the court could have imposed a lower sentence, it was an abuse of discretion to impose the negotiated term. The plea agreement defendant entered into called for ten years imprisonment, subject to fifty-seven months of parole ineligibility under Indictment No. 15-06-0448, to run

22

consecutive to the sentence under Indictment No. 15-03-0237, of five years with two-and-a-half years of parole ineligibility. The judge reduced the aggregate sentence from the agreed-upon fifteen years to twelve years. Defendant was sentenced, albeit to a discretionary extended term, on Indictment No. 15-06-0448 in the first-degree range to the lowest state prison term possible. The twelve-year sentence he received does not shock our conscience. See Roth, 95 N.J. at 364.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1442-16T4